**CELANESE CORP. et al., Plaintiffs,**

v.

**FEDERAL ENERGY ADMINISTRATION et al., Defendants.**

**Civ. A. No. 75–1518.**

United States District Court, District of Columbia.

Feb. 11, 1976.

Tucker W. Peterson, Washington, D. C., for plaintiffs.

William Warfield Ross, Washington, D. C., for defendant Consumers Power Co.

Christopher M. Was, Atty., Civil Div., Dept. of Justice, Washington, D. C., for defendant FEA.

## MEMORANDUM

GASCH, District Judge.

This case came on for hearing on the defendants' motions to transfer this matter to the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). For the reasons stated in this Memorandum, and without ruling on all of the merits of the pending motions to dismiss,[1] or the motion of General Motors Corporation for leave to intervene, the Court has determined that this case should be transferred[2] pursuant to 28 U.S.C. § 1404(a)[3] and, assuming without deciding that Consumers Power Company is an indispensable party, pursuant to 28 U.S.C. § 1406(a).[4] The Court has also determined to dismiss the complaint as against Consumers for lack of personal jurisdiction.

### I. *Plaintiffs' Claim.*

Plaintiffs are seventeen independent corporations who manufacture petrochemicals and who refer to themselves collectively in this action as the Petrochemical Energy Group, or "PEG." The PEG companies allegedly produce most of the petrochemicals manufactured in the United States and, in so doing, use natural gas, natural gas liquids,[5] crude oil, and other petroleum products as raw material. Defendants are the Federal Energy Administration, Frank Zarb (the FEA Administrator), and Consumers

---

1. The grounds asserted in support of the motions to dismiss include lack of personal jurisdiction over defendant Consumers Power Company, failure to join an indispensable party (Consumers), lack of standing in plaintiffs to attack the FEA rulings at issue here, and lack of subject matter jurisdiction. Consumers' motion to dismiss asserts all of these grounds for dismissal, whereas the FEA's motion joins in Consumers' indispensable party argument, but supports the plaintiffs' standing, and attacks the Court's subject matter jurisdiction only on the ground of failure to exhaust administrative remedies. General Motors Corporation has also filed with its motion for leave to intervene a motion to dismiss for failure to exhaust administrative remedies.

2. In the initial briefs submitted on the motions to dismiss, the defendants did not explicitly request that this action be transferred. Defendants' memoranda submitted in support of those motions stated, however, that the defendants would move for transfer to the Eastern District of Michigan if the Court denied the motions to dismiss. In an effort to expedite this case, the Court ordered on January 19, 1976, that the defendants' motions would be treated as motions for transfer as an alternative to dismissal, and further ordered the parties to submit supplemental memoranda addressed to the transfer issue before the date of the hearing on the motions to dismiss.

3. 28 U.S.C. § 1404(a) provides as follows:

   § 1404. *Change of Venue*
   (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

4. 28 U.S.C. § 1406(a) provides:

   The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

5. The record herein indicates that natural gas liquids are petroleum-related raw materials composed of ethane, propane, butane, and heavier hydrocarbons.

Power Company, a Michigan public utility.

In this action the PEG companies seek a declaratory judgment invalidating certain FEA decisions [6] that permitted Consumers Power Company to increase its allocation of natural gas liquids from 7,664 barrels per year to approximately 18 million barrels per year. The PEG companies oppose the increased allocation of natural gas liquids to Consumers Power because, according to ¶ 13(b) of the Amended Complaint, the increased allocation to Consumers will divert supplies of natural gas liquids "that would otherwise be available to meet the requirements of historic, high priority users, including those of plaintiffs."

Plaintiffs premise their request for declaratory judgment on several grounds. First, they claim that the FEA order under review here (1) violates the Emergency Petroleum Allocation Act ["EPAA"] [7] by failing to provide for an equitable distribution of allocated products as required in the EPAA, and by failing to achieve, to the maximum extent practicable, the objectives set forth in § 4(b) of the EPAA and in the Federal Energy Administration Act of 1974 ["FEAA"]; [8] (2) violates the rules and policies set out in FEA regulations; (3) was issued in violation of FEA procedural regulations and without full and fair notice or opportunity to be heard; (4) is not supported by substantial evidence and is arbitrary and capricious.

II. *Procedural Background.*

The PEG companies opposed Consumers' FEA application throughout the administrative proceedings by filing opposing comments and petitions to intervene.

When the FEA issued its order on May 21, 1975, granting Consumers' application for an 18 million barrel per year allocation, subject to certain restrictions, the PEG companies promptly filed an administrative appeal [9] to FEA's Office of Exceptions and Appeals, in accordance with FEA regulations. [10] In their FEA appeal, the PEG companies contended that the FEA should not have increased Consumers' allocation of natural gas liquids, and that the increased allocation was not subject to sufficiently stringent restrictions. Consumers Power Company and numerous other companies also filed administrative appeals [11] attacking the conditions imposed on Consumers Power's use of the increased allocation.

The FEA Office of Exceptions and Appeals issued its Decision and Order in Consumers' appeal on September 16, 1975, and in PEG's appeal on October 20, 1975. By those decisions the respective appeals were granted in part, denied in part, and remanded in part to FEA's Office of Regulatory Programs. Pending the decision on remand, however, the Decisions and Orders on appeal did not decrease the allocation granted by the May 21, 1975, Order.

The FEA's action on Consumers' appeal prompted the PEG companies to file this suit on September 18, 1975, before the FEA had decided PEG's own appeal. On October 14, 1975, Consumers filed its own suit, in the Eastern District of Michigan, based on the FEA's September 16, 1975, decision on Consumers' appeal. [12] Subsequently three of Consumers' customers and the Michigan Public Service Commission each filed suit in the Eastern District of Michigan. [13] All five of

---

6. *Consumers Power Company*, No. FEA–0460 (FEA Decision and Order, Sept. 16, 1975); *Petrochemical Energy Group*, No. FEA–0478 (FEA Decision and Order, Oct. 20, 1975).

7. 15 U.S.C. § 751 *et seq.* (Supp. IV, 1970).

8. 15 U.S.C. § 761 *et seq.* (Supp. IV, 1970).

9. *Petrochemical Energy Group*, No. FEA–0478.

10. 10 C.F.R. § 205.28, 205.38, and 205.100 (1975).

11. *Consumers Power Company*, No. FEA–0460; see also *General Motors Corp.*, No. FEA–0472, and six appeals consolidated with General Motors' appeal. PEG's most recent administrative appeal, filed on February 2, 1976, lists, in footnote 1, 15 appeals from the May 21 Order.

12. *Consumers Power Co. v. FEA, et al.*, C.A. No. 572000 (E.D.MICH.)

13. *Lowell Light and Power Co. v. FEA, et al.*, C.A. No. 572030; *Dow Chemical Co. v. FEA,*

the Michigan suits attack as too restrictive the conditions imposed on Consumers' use of the natural gas liquid allocation. According to the FEA's memorandum, those five suits have been consolidated for pretrial purposes before Judge Charles Joiner.

Since the filing dates of the six suits seeking review of the FEA's September 16 Order, the FEA's Office of Regulatory Programs has issued, on December 12, 1975, a Decision and Amended Order on the issues remanded to it by the FEA Office of Exceptions and Appeals. The December 12 Order redrafted and added new findings to the original May 21, 1975, Decision of the Office of Regulatory Programs on Consumers' petition. On February 2, 1976, one week before the hearing on the instant transfer motions, PEG filed its administrative appeal of the December 12 Order. General Motors and other participants in the agency proceedings had also been given until February 2 to file an administrative appeal, and they presumably did so.

III. *Reasons for Transfer Pursuant to 28 U.S.C. § 1404(a).*

■ In determining whether to transfer this matter to the Eastern District of Michigan, this Court recognizes that where transfer is sought pursuant to § 1404(a), a defendant has the burden of making out a strong case for a transfer and the plaintiff's privilege of choosing the forum is a factor to be considered as against what otherwise might be the balance of convenience between the parties.[14] The Court believes that the defendants have met this stringent test in this case by demonstrating that the Michigan venue is not significantly less convenient for plaintiffs, if less convenient at all, that the Michigan venue is more convenient for defendants, and that the transfer is necessary in order to avoid a needless duplication of judicial efforts in resolving suits that present many identical and complex legal issues, stemming from a single administrative agency order. Plaintiffs concede that this suit "could have been brought" in the Eastern District of Michigan.[15]

The interests of justice weigh heavily in favor of transferring this case. This suit seeks judicial review of the same FEA decisions that are at issue in five suits pending now before Judge Joiner in the Eastern District of Michigan. Plaintiffs in this case admit that this suit raises many of the same legal and factual issues that are raised in the five Michigan suits.[16] If the suits were to proceed in the two forums simultaneously, two courts would have to review the same agency orders, the same complex and voluminous agency record and decide identical issues of fact and law. Duplicate proceedings not only would result in a waste of judicial time but would doubtless yield conflicting decisions in some instances.[17] Moreover, decisions by either court on the issues before it could moot the issues pending before the other court. Under these circumstances, other federal courts have recognized that the

---

*et al.,* C.A. No. 572093; *Owens-Illinois, Inc. v. FEA, et al.,* C.A. No. 572104; *Michigan Public Service Commission v. FEA, et al.,* C.A. No. 572171.

**14.** *See Wiren v. Laws,* 90 U.S.App.D.C. 105, 107, 194 F.2d 873, 875 (1951).

**15.** The subject matter jurisdiction, if any, of the Eastern District of Michigan over this action is equivalent to that of this Court. The federal defendants and defendant Consumers are subject to service of process there, and venue is proper pursuant to 28 U.S.C. § 1391(b), (c), and (e).

**16.** See Plaintiffs' Statement of Points and Authorities in Opposition to [the FEA's] Motion to Dismiss, at note 17, where PEG states:

> In fact, Consumers raises many of the same contentions asserted by Plaintiffs in its action filed in the District Court for the Eastern District of Michigan, including a failure by FEA to comply with the requirements of the National Environmental Protection [Policy] Act of 1969, 42 U.S.C. § 4321, *et seq.* (NEPA), the lack of an analysis of the economic impact of its decision, and FEA's lack of procedural due process in reaching its decision.

**17.** The current pendency before both Judge Joiner and this Court of motions to dismiss the respective actions for failure to exhaust administrative remedies demonstrates the possibility for conflicting decisions that inheres in the present status of these cases.

"strong policy favoring the litigation of related claims in the same tribunal" [18] can outweigh the deference due the plaintiff's choice of forum.[19] The wisdom of avoiding duplicitous litigation increases with the complexity of the issues.[20]

Plaintiffs apparently recognize that this action should proceed with the five Michigan cases before a single judge, for at oral argument plaintiffs' attorney stated, in response to a question by the Court, that only one court should be reviewing all these cases. Plaintiffs contend, however, that this Court should retain this case in hopes that the five other cases will all be transferred to this Court at some later date. In support of this contention plaintiffs argue that they filed their suit one month before the first of the five Michigan suits was filed, that the issues raised in the six suits are "national" in scope and therefore more appropriately considered here than in Michigan, and that the District of Columbia venue is more convenient for the parties to this suit.

■ The chronological priority of this suit over the Michigan suits adds little if any weight to the § 1404(a) balance. That a suit was first filed signifies neither that litigation of the issues in the forum of the initial suit will advance the interests of justice nor that the initially selected forum is the most convenient for the parties and witnesses. Indeed,

this conclusion finds support in 28 U.S.C. § 2112(a), which dictates the procedure to be followed by the U. S. Courts of Appeals in determining which circuit will review the appeals from a given agency order when appeals are filed in more than one circuit.[21] Although plaintiffs imply that § 2112 mandates the consolidation of all the appeals in the circuit where the first appeal is filed, in fact the statute requires only that the Court of Appeals in which the first petition is filed must consider whether the convenience of the parties and the interests of justice demand transfer of the matter. Presumably the Court that received the first filing is free to decide this question either way. Therefore the analogy plaintiffs seek to draw from § 2112 simply underscores this Court's duty to determine whether considerations of convenience and interests of justice require transfer of this case.

■ Plaintiffs' emphasis on the "national" scope of these issues likewise bears little relationship to the dual considerations set forth in § 1404(a). Even assuming that the issues raised by these suits are purely national in scope, national issues are not uniquely suited for trial in the District Court for the District of Columbia. In fact, the statutory scheme that governs judicial review of FEA decisions implies no preference whatsoever for review in the District of Columbia.[22] The nature of this case as a review of

18. *Wyndham Associates v. Bintliff*, 398 F.2d 614, 619 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968).

19. *See, id.;* see also *General Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 368 (4th Cir. 1967); *Thomas v. United States Lines, Inc.*, 371 F.Supp. 429, 432 (E.D.Pa.1974); *Maxlow v. Leighton*, 325 F.Supp. 913, 915–16 (E.D.Pa. 1971); *Jacobs v. Tenney*, 316 F.Supp. 151, 169 (D.Del.1970).

20. *See Maxlow v. Leighton*, 325 F.Supp. 913, 915–16 (E.D.Pa.1971).

21. 28 U.S.C. § 2112(a) reads, in pertinent part, as follows:

If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency . . . concerned shall file the record in that one of such

courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. *For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.* [Emphasis added.]
See also *Abourezk v. F. P. C.*, 168 U.S.App. D.C. 246, 513 F.2d 504, 505 n. 1 (1975).

22. See 15 U.S.C. § 766(i)(2)(B) (Supp. IV, 1970) (". . . the district courts of the United States shall have exclusive original jurisdiction of all other cases or controversies arising under this chapter . . ..")

agency action in no way suggests that this District Court is better qualified to review the record than is the Eastern District of Michigan.

Thus the crucial factor to weigh against the considerations of judicial efficiency is the convenience to the parties and witnesses of litigating this case in this forum. The convenience to witnesses is of course either irrelevant here or nearly so, since the District Court's function in this case is to review the administrative record.[23] Consumers and the FEA would find the Michigan forum considerably more convenient than this forum, since they are already involved in litigating the same agency order in that forum. Also, the agency record will be transported to Michigan for the other suits, and agency attorneys will have to travel to Michigan whether or not this suit is transferred.

The Court remains unconvinced, moreover, that the transfer of this case to the Michigan forum would pose any inconvenience to the PEG companies. The seventeen plaintiff companies do business throughout the country, and maintain offices in the District of Columbia primarily for purposes of interacting with the federal government. PEG admitted during oral argument and in its motion papers that PEG is simply an "ad hoc" group of companies, none of which maintains corporate headquarters here. Under these circumstances PEG's claim that the District of Columbia is its "home forum" means only that the District of Columbia is the home forum of the attorneys that represent the seventeen companies in their ad hoc functions as the Petrochemical Energy Group. Thus the inconvenience to PEG must be measured by the inconvenience to its attorneys.

Since, as the record in this case indicates, PEG's attorneys have been attending the proceedings before Judge Joiner to date anyway, and will no doubt continue to do so even if this case is not transferred, the Court fails to perceive how PEG will be inconvenienced by transfer of this case to Michigan. Only if the Michigan cases were transferred here would PEG benefit by this Court's retention of this case. The FEA has not sought such a transfer, however, and no statute or rule requires transfer of those five cases to this District. Moreover, five plaintiffs have chosen the Michigan forum, the inconvenience to all the parties to this agency review proceeding as a whole would presumably be five times as great if the Michigan cases were transferred here rather than this case being transferred to Michigan.

For the reasons stated, it appears to this Court that transfer to the Eastern District of Michigan will advance the interests of justice, and will not inconvenience the plaintiffs. Accordingly, transfer under § 1404(a) is proper in this case.

IV. *This Court's Lack of Personal Jurisdiction Over Consumers Power Company as an Additional Reason to Transfer This Case.*

One consideration in addition to those set forth above influences this Court's decision to transfer this case. Both the FEA and Consumers have moved to dismiss the complaint as against Consumers because of lack of personal jurisdiction, and to dismiss the complaint entirely for lack of an indispensable party, namely, Consumers. If this Court were to rule that it lacks personal jurisdiction over Consumers but that Consumers is not an indispensable party, any further proceedings in this case in this forum might ultimately be reversed by the Court of Appeals solely on a question of parties. Since, for reasons set forth below, this Court finds that it does lack jurisdiction over Consumers, the indispensability issue will in fact cast a cloud over these proceedings unless the case is transferred. The indispensability issue will of course disappear upon transfer to Consumers' home forum.

Consumers is a Michigan public utility and does no business in the Dis-

---

**23.** *OKC Corp. v. Oskey Gasoline & Oil Co.,* 381 F.Supp. 865 (N.D.Tex.1974).

trict of Columbia. Consumers' only contacts with the District have been in its capacity as a participant in the FEA proceeding that engendered this lawsuit. PEG concedes, as it must,[24] that Consumers' agency contacts do not amount to "doing business" within the meaning of the District of Columbia long-arm statute. In fact, PEG specifically disclaims any intent to rely on D.C.'s long-arm statute or on any other statute to validate the extraterritorial service of process that PEG effectuated on Consumers in Michigan. Instead, PEG contends that in a suit on a federal right, extraterritorial service in the manner prescribed by Federal Rule 4(d) is effective, even without any authorizing statute, if the person served has established "minimum contacts" with the forum within the meaning of the due process clause. PEG cites no authority that supports this unusual proposition,[25] and no attempt is made to reconcile the proposition with the territorial limits on effective service of process set forth in Federal Rule of Civil Procedure 4(f). Accordingly, the conclusion is inescapable that this Court lacks personal jurisdiction over Consumers, and the complaint must therefore be dismissed as to it.

Lacking personal jurisdiction over Consumers, the Court is faced with the argument that the entire case must be dismissed because, as beneficiary of the 18 million barrels per year allocation under attack here, Consumers is an indispensable party to this proceeding within the meaning of Federal Rule 19(b). The Court has considered the briefs submitted by the parties on this point and finds the proper resolution of the indispensability question to be very ambiguous because of the nature of this case as a review of agency action.

■ Fortunately the transfer of this case provides an appropriate alternative to deciding this complex issue, since even if Consumers were held indispensable, transfer would be appropriate under § 1404(a)[26] and § 1406(a) as well. Several circuit courts have interpreted § 1406(a) as providing an alternative to dismissal when, although venue is "correct" according to 28 U.S.C. § 1391, the venue is nonetheless laid in the "wrong district" because personal jurisdiction over the necessary parties cannot be obtained there.[27] Accordingly, without deciding whether Consumers is indispensable, the Court hereby recognizes that § 1406(a) provides an additional basis for the transfer of this action if Consumers is an indispensable party to the proceedings before this Court.

**24.** See *Fandel v. Arabian American Oil Co.,* 120 U.S.App.D.C. 193, 345 F.2d 87 (1965); *Siam Kraft Paper Co. v. Parsons & Whittemore, Inc.,* 400 F.Supp. 810 (D.D.C.1975) (Pratt, J.).

**25.** As support for plaintiffs' position, they cite only *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); and *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Those cases are patently inapplicable, however. In *International Shoe,* the defendant was served in the forum state. In *Hanson,* the Court held only that the defendant corporation had not established "minimum contacts," within the meaning of the 14th Amendment, with the forum state. The Court did not imply that if minimum contacts had been present, the courts of the forum state could have obtained personal jurisdiction by means of extraterritorial service of process in the absence of a statute providing for such service. In *McGee,* extraterritorial service on the defendant was effected pursuant to a state long-arm statute.

**26.** See *United States v. Berkowitz,* 328 F.2d 358, 361 (3d Cir.), *cert. denied,* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964) (transfer permissible under § 1404(a) even though court lacks personal jurisdiction over defendant); *Caldwell Mfg. Co. v. Unique Balance Co.,* 18 F.R.D. 258, 265 (S.D.N.Y.1955) (same).

**27.** See *Taylor v. Love,* 415 F.2d 1118 (6th Cir. 1969), *cert. denied,* 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); *Mayo Clinic v. Kaiser,* 383 F.2d 653 (8th Cir. 1967); *Dubin v. United States,* 380 F.2d 813 (5th Cir. 1967).