Leon STEINBERG, Appellant,

v.

**INTERNATIONAL CRIMINAL POLICE ORGANIZATION, et al.**

No. 80–1336.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 16, 1981.

Decided Oct. 23, 1981.

On Petition for Rehearing Feb. 16, 1982.

Robert A. Seefried, Washington, D. C., with whom Russell F. Canan, Washington, D. C., was on the brief for appellant.

Rebecca L. Ross, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth, and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief for amicus curiae, United States of America, urging affirmance.

John A. Terry, and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., also entered appearances for amicus curiae.

Before ROBINSON, Chief Judge, WRIGHT and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

Concurring statement filed by Circuit Judge J. SKELLY WRIGHT.

GINSBURG, Circuit Judge:

This is a defamation action commenced in January 1977 by Leon Steinberg, a United States citizen residing in Florida, against the International Criminal Police Organization (Interpol) and Interpol's Secretary General. Headquartered outside Paris in Saint Cloud, France, Interpol was organized in 1923 to promote mutual assistance and facilitate communications among criminal police authorities in different countries.[1] Steinberg alleges that Interpol published a document in the United States and in 125 other countries erroneously describing him as a wanted international criminal.

Invoking diversity jurisdiction under 28 U.S.C. § 1332, and asserting in personam jurisdiction pursuant to the District of Columbia Long Arm Statute, specifically, D.C. Code § 13–423(a)(1) and (a)(4), Steinberg delivered process in the District of Columbia to United States officials maintaining liaison with Interpol, and in France, to Interpol's Secretary General at his residence. Interpol and its Secretary General did not acknowledge service and have not appeared in the action. However, on the suggestion of the United States, appearing as amicus curiae, the district court, in February 1980, dismissed the complaint for lack of personal jurisdiction over the defendants.

The district court expressed sympathy with Steinberg's jurisdictional arguments observing:

Interpol appears to occupy a rather ambiguous and shadowy existence in this country. It claims not to exist in the United States, yet it disseminates information here, maintains close liaison with United States law enforcement authorities, is in effect represented in court by the U.S. Department of Justice and, if the complaint is to be believed—as it must be for present purposes—defames American citizens in the United States as well as elsewhere.

Appendix (A.) at 297. Nonetheless, the district court read our decision in *Sami v. United States*, 617 F.2d 755, 758–60 (D.C. Cir.1979), as according Interpol blanket immunity "from the reach of American tribunals." It therefore remitted Steinberg "to whatever relief he may be able to secure from [the Court of Appeals] or from the Congress." A. 297.

We reverse the judgment dismissing the complaint and direct reinstatement of the action. In extending the *Sami* ruling as to Interpol beyond the bounds of that controversy,[2] the district court, tracking the position urged by the United States as amicus curiae, obscured a distinction important to analysis of issues concerning jurisdiction over persons in modern American law. The district court did not differentiate sharply between (1) general, "all purpose" adjudicatory authority to entertain a suit against a defendant without regard to the claim's relationship *vel non* to the defendant's forum-linked activity, and (2) specific jurisdiction to entertain controversies based on acts of a defendant that touch and concern the forum. *See generally* von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. 1121 (1966); *cf. Donahue v. Far Eastern Air Transport Corp.*, 652 F.2d 1032, 1034, 1036–37 (D.C.Cir.1981).

1. Interpol is composed of member countries represented by their law enforcement officials. The United States is not a party to any international agreement or treaty defining Interpol's status. According to a Report of the Comptroller General on United States involvement in Interpol, some have referred to the organization as "intergovernmental," others call it "private" or "nongovernmental." Appendix (A.) 112, 123, 143. Interpol carries on no investigations but "distributes and coordinates the free flow of information between law enforcement entities throughout the world." Brief of Amicus Curiae United States of America at 6.

2. While affirming the dismissal of the action against Interpol, the court in *Sami* reversed the summary judgment dismissing the action against the United States. In this case, Interpol and its Secretary General are the sole defendants.

*Sami,* to the extent the complaint cited Interpol as a defendant, involved an attempt to invoke general, "all purpose" jurisdiction. Plaintiff in that imbroglio stemming from a marital breakdown was a citizen of Afghanistan employed at the International Monetary Fund in Washington, D. C. He left the country with his two children in violation of a Florida court order, and was arrested by German authorities in Frankfurt. His presentations in the litigation identified no communication, here or abroad, during the episode about which he complained that emanated from Interpol itself. The plaintiff in *Sami* alleged that Interpol was "doing business" in the District of Columbia.[3] "Doing business," traditionally, ranked as a basis for general adjudicatory authority. A defendant who "did business" in the forum could be sued on claims that arose elsewhere, claims that had slim or even no ties to the forum. *See* 4 C. Wright & A. Miller, Federal Practice and Procedure §§ 1067–69, 1073 (1969) (discussing cases applying the "doing business" test since *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

This case, by contrast, involves an invocation of specific, not general, adjudicatory authority, a category encompassing claims arising from forum-linked acts or consequences. Steinberg asserts that Interpol itself initiated a publication that defamed him, and transmitted the offending publication to its liaison in the District of Columbia, as well as to others in Interpol's network here and abroad. Interpol's publication, which it disseminated in the District, Steinberg alleges, gave rise in substantial part to the claim in suit. For the reasons developed below, we conclude that, on the record as it now stands, Washington, D. C., is a fair and reasonable place, within due process constraints,[4] for the action Steinberg has commenced and that Interpol was appropriately brought to court under the District of Columbia Long Arm Statute.

## I. THE EPISODE IN SUIT

Steinberg's complaint identifies an Interpol document, titled "Blue International Notification 500/59–A3674," describing him as a wanted international criminal who used the alias "Mark Moscowitz." Interpol widely communicated the Notification, Steinberg alleges, to its liaisons, among them, the United States National Central Bureau (USNCB), now located in the Department of Justice, this country's liaison with Interpol.[5] In the summer of 1975, on learning of the document and Interpol's transmission of it to liaisons, Steinberg asserts, he notified Interpol and twice offered proof that the Notification was erroneous. Despite the proof he offered, Steinberg further states, Interpol continued to publish the Notification and other statements associating Steinberg with "Mark Moscowitz." It did so, according to Steinberg, until late July 1976, when Interpol finally conceded Leon Steinberg was not "Mark Moscowitz." Steinberg seeks general and punitive damages for the substantial injury he alleges he has suffered as a result of the Blue International Notification.

We emphasize the evident difference between Steinberg's complaint against Interpol and the Interpol forum connections indicated in *Sami v. United States, supra.* While *Steinberg* complains solely of communications sent here and to other coun-

---

3. *See* D.C.Code § 13–334(a) (traditional "doing business" test).

4. *See* note 13 *infra.*

    Our analysis and conclusion are guided by recent Supreme Court decisions elaborating upon Chief Justice Stone's benchmark opinion in *International Shoe Co. v. Washington, supra,* particularly, *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), *Rush v. Savchuk,* 444 U.S.

320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), and *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

5. Steinberg does not maintain that USNCB acts as an agent for Interpol or that Interpol has an office here. *See Sami v. United States, supra,* 617 F.2d at 759–60. He does assert, however, that USNCB has "advertised itself" as "Washington Interpol." *See* Reply Brief at 3 n.5; A. 106, 107.

tries by Interpol itself, in *Sami* the demonstrated ties between the forum and Interpol were "remote from the wrongs alleged." The record in *Sami* did not establish that communications "received in this forum from abroad" relating to the events in suit "were initiated by Interpol"; from all that appeared in *Sami*, the messages sent here from abroad were dispatched by officers acting "strictly . . . as agents of their own states' governments." 617 F.2d at 760.

## II. AUTHORITY TO SUMMON INTERPOL TO RESPOND IN THIS FORUM

At the outset, we stress a key feature of this case. The issue posed for decision is not whether the district court here is more or less appropriate than some other forum in the United States for adjudication of the claim in suit. *Cf. World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (suit against local dealer, although it could not proceed in Oklahoma, could be maintained in New York). The alleged offending Interpol Notification was transmitted to Interpol's liaison, USNCB, in Washington, D. C., and no forum in this country is suggested to be more suitable than the District of Columbia for consideration of the case. Our task, therefore, is to determine whether Leon Steinberg, a citizen and domiciliary of the United States, may call Interpol to account at all in the United States for a publication Interpol sent here and abroad that Steinberg claims is a libel, causing him shame, humiliation, and mental suffering.

Steinberg has invoked federal court subject matter competence on the basis of the parties' diversity of citizenship. 28 U.S.C. § 1332(a)(2). He asserts no claim arising under federal law.[6] Personal jurisdiction over the defendants, therefore, initially turns on local (state) law, in this case, District of Columbia law. *See Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir. 1963) (en banc); *Ramamurti v. Rolls-Royce Ltd.*, 454 F.Supp. 407 (D.D.C.1978), aff'd mem., 612 F.2d 587 (D.C.Cir.1980); 4 C. Wright & A. Miller, Federal Practice and Procedure § 1075, at 309–10 & n.50 (1969). Application of that law, however, is subject to a federal check. In United States jurisprudence, the outer boundaries of a court's authority to proceed against a particular person or entity is set by a due process measure, imposed on action at the national level by the Fifth Amendment, and on state action by the Fourteenth Amendment. *See Donahue v. Far Eastern Air Transport Corp., supra*, 652 F.2d at 1036 (separate local law, federal check (due process) inquiries are telescoped when state law standard is "any basis [of personal jurisdiction] not inconsistent with the Constitution"); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 203 (D.C.Cir.1981) (state law may be coextensive with due process, or it may require connections between defendant or episode in suit and forum beyond these due process commands). We examine first the question whether the District of Columbia Long Arm Statute supplies a rule of competence, *i.e.*, a rule authorizing the exercise of personal jurisdiction, that covers this case. We next consider whether the exercise of jurisdiction over Interpol in this action is compatible with the due process measure.

Steinberg relies, in the alternative, on two provisions of the District of Columbia Long Arm Statute. First, he invokes D.C. Code § 13–423(a)(1), which authorizes the "exercise [of] personal jurisdiction over a person . . . as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." Second, he cites D.C.Code § 13–423(a)(4), which provides for suit against a nonresident "who caus[es] tortious injury in the District of Columbia by an act or omission outside the District" so long as the nonresident "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods

---

6. We express no opinion at this juncture on the choice of law question that may be presented should this case proceed to adjudication on the merits. *Cf. Founding Church of Scientology v. Verlag*, 536 F.2d 429, 436 (D.C.Cir.1976).

used or consumed, or services rendered in the District of Columbia." Subsection (a)(4), we believe, provides a rule of competence fully appropriate to the claim in suit. We therefore pretermit the question whether the "transacting any business" provision, subsection (a)(1), also supports the exercise of personal jurisdiction in this case.[7]

Interpol acted abroad (in France) in transmitting the Notification said to defame Steinberg, and allegedly caused injury to Steinberg in the District and elsewhere when it dispatched the Notification to USNCB and other liaisons.[8] But subsection (a)(4) requires something more. The pivotal question with respect to that subsection's application here is whether Interpol "engages in [a] persistent course of conduct . . . in the District of Columbia."

■ We emphasize that the "persistent course of conduct" to which the statute refers denotes connections considerably less substantial than those required to establish general, "all purpose" jurisdiction on the basis of "doing business" in the forum. Subsection (a)(4) is taken from the Uniform Interstate & International Procedure Act (13 U.L.A.) § 1.03(a)(4). It was the Commissioners' design, in requiring something more than the in-forum impact at issue in the litigation, to exclude cases in which that impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum. *See* 13 U.L.A. at 468–69 (1980) (Commissioners' Comment); *Founding Church of Scientology v. Verlag*, 536 F.2d 429, 432 (D.C.Cir.1976) (the "persistent course of conduct" need not be related to the act that caused the injury; all that is required is "some other reasonable connection" between the defendant and the forum). *See also* Note, *The Virginia "Long Arm" Statute*, 51 Va.L.Rev. 719, 749 (1965).

■ It is undisputed that the United States, pursuant to statutory authorization, 22 U.S.C. § 263a, participates in Interpol, that USNCB, situated in the District, acts as this country's Interpol liaison, and that USNCB regularly sends information to and receives information from Interpol. Even without the further Interpol-Washington, D. C., links indicated in discovery pursued in this action (*e.g.*, dealings between Interpol and United States agencies other than USNCB; meetings here attended by Interpol officers), the subsection (a)(4) "persistent course of conduct" proviso is met. Interpol has constant liaison with the nation's capital. Its longstanding ties to this forum, while they do not add up to "doing business" here,[9] suffice to supply the "something more" subsection (a)(4) requires.

7. The United States, as amicus curiae, stresses that Interpol acted outside the forum and that its "business" is noncommercial. Brief of Amicus Curiae United States of America at 10. *But cf. Stabilisierungsfond Fur Wein, supra,* 647 F.2d at 205 (foreign country corporations transacted business here although they had not personally entered the district); *McLaughlin v. Copeland,* 435 F.Supp. 513, 524 (D.Md.1977); *Novack v. National Hot Rod Ass'n,* 247 Md. 350, 356, 231 A.2d 22, 26 (1967); *Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 170, 215 A.2d 812, 820–21 (1966) ("transacting business" as a basis for long-arm jurisdiction is not confined to commercial ventures). The District of Columbia Court of Appeals has concluded that the "transacting any business" provision of the Long Arm Statute is coextensive with the due process measure, but has not yet determined the limits of other sections. *See Mouzavires v. Baxter,* 434 A.2d 988, at 991 (D.C. Aug. 5, 1981) (per curiam opinion on rehearing en banc).

8. The forum is not rendered inappropriate because Steinberg alleges Interpol defamed him in other locations as well as in the District of Columbia. D.C.Code § 13–423(b) limits long-arm competence to "a claim for relief arising from acts enumerated" in subsection (a) of the statute. The District of Columbia Court of Appeals, however, has noted that "[t]he concept of cause of action or claim for relief [in subsection (b) ] should be broadly construed to cover an entire transaction so that, when possible, the entire dispute may be settled in a single litigation." *Cohane v. Arpeja-California, Inc.,* 385 A.2d 153, 159 (D.C.) (quoting Uniform Interstate & International Procedure Act (13 U.L.A.) § 1.03, Commissioners' Comment at 288 (1975)), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978). [The relevant Commissioners' Comment appears in the new volume of Uniform Laws Annotated at 13 U.L.A. 470 (1980).]

9. *See Sami v. United States, supra,* 617 F.2d at 759–60; text at note 3 *supra.*

■ Finally, we find no due process infirmity in the application of subsection (a)(4) to this case. Given the mutually beneficial relationship between Interpol and the United States, and the regular contacts Interpol has with this country and District, we perceive no unfairness to the defendants in requiring them to appear and interpose an answer to Steinberg's complaint.[10] Nor is there any suggestion that adjudication in the District would intrude upon the sovereignty of another nation or state of the United States. *Cf. World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 291–92, 297, 100 S.Ct. at 564, 567.[11] Taking into account the nature and quality of the alleged act and tortious injury, "the convenient administration of justice in all its aspects, including alternative forums,"[12] and Steinberg's interest, as a United States citizen and domiciliary, in vindicating his reputation as an individual without a criminal record, we hold that, whatever defenses Interpol and its Secretary General may have to the claim in suit, the litigation is not barred at the threshold for lack of in personam jurisdiction.[13]

**10.** While the United States, as amicus curiae, successfully moved to quash service on USNCB on the ground that it is not an agent of Interpol, no assertion has been made that Interpol lacks notice of this litigation. Any objection to the sufficiency of process or of the service of process made in France may be interposed by Interpol or its Secretary General, *see* Fed.R.Civ.P. 12(b)(4), (5), but these notice-related objections would not go to the root question, whether the nexus between Interpol, the forum, and the claim in suit is sufficient to justify maintenance of the action here.

We further note the acknowledgement by the United States that a "blanket exemption for governmental contacts no longer exists in the District of Columbia" (Brief of Amicus Curiae United States of America at 15), and the absence of any specification by the United States of a First Amendment basis for exempting Interpol from suit here. *See Rose v. Silver,* 394 A.2d 1368, 1374 (D.C.1978) ("First Amendment provides the only principled basis" for "government contacts" exemption), petition for rehearing en banc denied, 398 A.2d 787 (D.C.1979).

**11.** In *World-Wide Volkswagen,* the Supreme Court explained that, with respect to state court jurisdiction, the due process check serves twin purposes: it ensures fairness to the defendant; and it prevents states from treading upon each other's sovereignty. The United

## CONCLUSION

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

J. SKELLY WRIGHT, Circuit Judge, concurring:

I write only to express my view that 13 D.C.Code § 423(a)(1) provides strong statutory support for the result reached in this case. That subsection authorizes the "exercise [of] personal jurisdiction over a person * * * as to a claim for relief arising from the person's * * * transacting any business in the District of Columbia * * *." Here, appellant's cause of action arises directly from Interpol's constant communications with the USNCB in the District, and in particular from appellee's alleged publication of a defamatory notice in the District.[1] Given the broad reach of subsection (a)(1),[2] Interpol's activity undoubtedly constitutes the transaction of "any business." *Cf. Sta-*

States, as amicus curiae, has focused its argument on the fairness-to-defendant consideration, *i.e.,* the reasonableness and convenience of the forum in view of its links with the defendant and the episode in suit. It has not urged that maintenance of this action would encroach upon the sovereignty of any foreign country or state of the United States.

**12.** Restatement (Second) of Judgments, Reporter's Note at 67–68 (Tent. Draft No. 5, 1978).

**13.** Our decision is based on the record as it now stands. By clarifying that the decision in *Sami* does not impede the assertion of personal jurisdiction over Interpol in this case, we do not intend to foreclose any defense, jurisdictional or otherwise, Interpol itself, or its Secretary General, may raise predicated on material not before us. *Cf. Rose v. Silver, supra,* 394 A.2d at 1372 n.5.

**1.** *See* Complaint ¶ 6 (Appendix at 4).

**2.** Indeed, subsection (a)(1) permits the exercise of jurisdiction to the limits of the due process clause of the Constitution. *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 810–811 (D.C.C.A.1976) (*en banc*).

*bilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 205 (D.C.Cir.1981) (foreign corporations transacted business in the District even though they had not entered it); *Margoles v. Johns*, 483 F.2d 1212, 1218 (D.C.Cir.1973) (discussing cases holding that individuals transacted business by making telephone calls into state) (dicta); *Novack v. Hot Rod Ass'n*, 247 Md. 350, 356, 231 A.2d 22, 26 (1967) (identical Maryland provision covers purposeful activity within the state even if the acts are neither part of commerce nor for profit).

On Petition for Rehearing

Before ROBINSON, Chief Judge, WRIGHT and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

Separate statement concurring in the denial of rehearing filed by Chief Judge SPOTTSWOOD W. ROBINSON, III, with whom Circuit Judge J. SKELLY WRIGHT joins.

GINSBURG, Circuit Judge:

█ The petition for rehearing and the supporting brief of amicus curiae United States of America rest in considerable part on a misreading of the panel's opinion. Appellee Interpol did not appear in the district court, nor did it appear before this court on appeal. When this court reviewed the district court's order dismissing the complaint, therefore, the record contained no submission by Interpol. The panel opinion, however, states:

> Our decision is based on the record as it now stands.... [W]e do not intend to foreclose any defense, jurisdictional or otherwise, Interpol itself or its Secretary General may raise predicated on material not before us.

At 932 n.13. There is accordingly no occasion for Interpol to seek a remand from this court "for the purpose of allowing it to prove that the factual allegations set forth in appellant's complaint that are the basis of [the] finding of jurisdiction are untrue." The panel opinion does not in any way foreclose Interpol from proving facts relevant to jurisdiction; the presentation Interpol proposes in its rehearing petition would thus be "consistent with [the panel's] opinion."

We further note that no question of an official or foreign sovereign immunity defense to Steinberg's action was raised before the panel. The court decided only the threshold issue of in personam jurisdiction on the existing record. The opinion leaves no doubt that this court has not precluded Interpol and its Secretary General from raising in the district court "whatever defenses [they] may have to the claim in suit." At 932.*

SPOTTSWOOD W. ROBINSON, III, Chief Judge, with whom J. SKELLY WRIGHT, Circuit Judge, joins, concurring in denial of rehearing:

Interpol, which now appears in this litigation for the first time, complains that we accepted as true Steinberg's factual allegations relating to jurisdictional contacts. That indeed we did so is something for which Interpol bears full responsibility. Interpol could readily have utilized the mechanisms provided by the Federal Rules of Civil Procedure enabling participation in the case without jeopardizing its arguments that personal jurisdiction was lacking;[1] instead, it chose simply to ignore Steinberg's complaint. It filed neither motion nor answer within the time specified by the Rules, and in such circumstances Rule 8(d) authorized treatment of material allegations of the complaint as admitted.[2]

---

* We regard as moot, in view of our disposition, Steinberg's motion to strike Interpol's petition for rehearing. Steinberg's request for attorney's fees is premature and may be addressed by the district court should Steinberg decide to raise the question there.

1. See Fed.R.Civ.P. 12(b); 2A J. Moore & J. Lucas, Federal Practice ¶ 12.12 at 2324–2325 (2d ed. 1981).

2. *Campbell v. Campbell*, 83 U.S.App.D.C. 237, 170 F.2d 809 (1948); *In re Uranium Antitrust Litigation*, 473 F.Supp. 382, 391 (N.D.Ill.1979); 2A J. Moore & J. Lucas, *supra* note 1, ¶ 8.29 at

Interpol seeks to extricate itself from this self-imposed predicament through a remand "for the purpose of allowing it to prove that the factual allegations set forth in [Steinberg's] complaint that are the basis of this Court's finding of jurisdiction are untrue."[3] When earlier we resolved Steinberg's appeal, we were not, of course, presented with a need to rule on the current status of defending parties who fail timely to tender any motion or responsive pleading, and we were careful not to obstruct any path the District Court might properly travel on remand.[4] Accordingly, as my colleagues state, our disposition does not, by its own force, preclude Interpol from now presenting whatever evidence on the jurisdictional point it has belatedly decided to proffer. In my view however, the question whether Interpol may do so rests, in the first instance with the District Court, which has at least two considerations to address in regard to such a request. As already noted, the effect of Rule 8(d) must be assessed. Additionally, the District Court's docket reveals that Steinberg has moved, pursuant to Rule 55,[5] for a default judgment; apparently that motion has not been ruled on.

In essence, our prior decision put the case in the posture it would have assumed had the District Court itself determined the jurisdictional point in Steinberg's favor. As the case thus remains, Interpol stands before the court an unresponsive defendant, and Rules 8 and 55 may affect its freedom now to contest the allegations of the complaint. Having decided to sit out the game rather than challenge Steinberg's hand compliably with the rules, Interpol must deal as best it can with the consequences of its gamble.

Interpol also vigorously argues various issues of immunity. As my colleagues have noted, this action has yet to proceed to the point where these may become relevant, and no question of official or sovereign immunity was tendered on appeal. We ruled simply on the question of personal jurisdiction, and it is generally accepted that immunity is not a facet of that issue.[6]

Finally, I address briefly points raised in a motion by Steinberg to strike Interpol's petition for rehearing. One can readily sympathize with Steinberg's frustrations over the exceedingly peculiar manner in which this case is being "defended." Interpol, perhaps wishing to dramatize the argument that it has no existence in or palpable contact with this jurisdiction, has, until the instant petition, refused to materialize in court; instead, its thoughts and desires have been imparted through the United States acting as medium. Yet, no one has revealed to us any special dispensation relieving Interpol of an obligation to abide by the Civil Rules just as any other mortal. It therefore seems safe to presume that the District Court on remand will ensure that this case either proceeds in accordance with established procedures or is terminated in conformity with them; with denial of the petition it is unnecessary to consider further Steinberg's motion to strike. As for his request for attorney's fees, I believe that any question of sanctions against Interpol is more appropriately for the District Court as part of its determination of the current status of the action. That court is better able to grapple with the problems

---

8–276; 5 C. Wright & A. Miller, Federal Practice § 1279 at 352–356 & n.59 (1969). *Cf. Peters & Russell, Inc. v. Dorfman*, 188 F.2d 711, 712–713 (7th Cir. 1951) (applying Rule 8(d) where plaintiff failed to reply to counterclaim denominated as such). See also the following cases, which cite Rule 8(d) as support for the principle that, on default for failure to answer or otherwise defend, well-pleaded factual allegations of the pleading that relate to liability, as opposed to damages, will be taken as true. *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (answer filed but subsequently stricken); *Fehlhaber v. Indian Trails, Inc.*, 425 F.2d 715,

717 (3d Cir. 1970); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

**3.** Petition for Rehearing and Suggestion for Rehearing En Banc at 2.

**4.** *Steinberg v. International Criminal Police Org.*, 672 F.2d 927, at 932 and n.13. (D.C.Cir. 1981).

**5.** Fed.R.Civ.P. 55.

**6.** See 5 C. Wright & A. Miller, *supra* note 2, § 1351 at 561.

bred by the anomalous procedural route that Interpol has pursued, and it is not for us to predetermine the course of the case on remand.