# Designation of Interpol as a
# Public International Organization Under the
# International Organizations Immunities Act

The International Criminal Police Organization, INTERPOL, qualifies for designation by the President as a "public international organization" under the International Organizations Immunities Act, 22 U.S.C. § 288 (IOIA), entitled to enjoy certain privileges, exemptions, and immunities under United States law. INTERPOL is composed exclusively of states as members and the United States participates in INTERPOL pursuant to statutory authority.

Statutory protection is limited to international organizations that can demonstrate a particularized need for such protection. INTERPOL's contacts with the United States are sufficient to demonstrate a need for protection, notwithstanding its lack of an office and permanent staff in the United States. Because INTERPOL does not have an office or staff in the United States, however, several of the specific privileges, exemptions and immunities available under the IOIA may be inapplicable. In an executive order designating INTERPOL as a public international organization, the President could limit the privileges, exemptions, and immunities accorded to INTERPOL to those necessary to carry out its essential functions in the United States.

January 12, 1983

MEMORANDUM OPINION FOR THE CHIEF, INTERPOL
UNITED STATES NATIONAL CENTRAL BUREAU

This responds to your request for our opinion whether the International Criminal Police Organization (INTERPOL) qualifies for designation as a "public international organization" under the International Organizations Immunities Act, 22 U.S.C. § 288 (IOIA or Act). The IOIA provides certain privileges, exemptions, and immunities under United States law to eligible public international organizations designated by executive order. For the reasons set forth below, we conclude that INTERPOL meets the threshold legal requirements for designation under the IOIA. The most important immunity available to INTERPOL by virtue of such designation would be immunity of INTERPOL and its officers, employees, and representatives from suit or legal process with respect to acts performed within the scope of the functions of INTERPOL. Because INTERPOL does not maintain any office or permanent staff in the United States, many of the other privileges, exemptions, and immunities afforded by the IOIA may be irrelevant or unnecessary to protect the functioning of INTERPOL in the United States. We suggest, therefore, that the privileges, exemptions, and immunities available under the Act could be limited by

1

executive order to those necessary for INTERPOL to carry out its essential function, *i.e.*, the coordination and exchange of police information among its member states.

At the outset, we note that our advice here is limited to the threshold legal considerations raised by the possible designation of INTERPOL under the IOIA. INTERPOL has not yet applied for designation, although we understand an application will be filed with the Department of State in the near future. We therefore cannot comment specifically on the details of the designation. This Office will, of course, review for form and legality the draft executive order designating INTERPOL, if the decision is made to proceed. We also do not address policy questions raised by INTERPOL's possible designation under the IOIA. You may wish to pursue those questions through appropriate channels within this Department, the State Department, and the White House.

## I. Background

The IOIA authorizes the President to designate "public international organizations" in which the United States participates as being entitled to enjoy certain privileges, exemptions, and immunities under United States law. 22 U.S.C. 288. These privileges, exemptions, and immunities include: (1) the capacity to contract, to acquire and dispose of real and personal property, and to institute legal proceedings; (2) immunity from suit and legal process for the organization; (3) immunity of the organization's property and assets from search and confiscation, and inviolability of its archives; (4) exemption from customs duties and internal revenue taxes on goods imported by the organization, exemption from registration requirements for foreign agents, and inviolability of official communications; and (5) exemption from property taxes. *Id.* §§ 288a(a)-(d), 288c. The Act also provides certain immunities and exemptions for officers and employees of the organization and for foreign representatives to the organization including, most importantly, immunity from suit and legal process with respect to "acts performed by them in their official capacity and falling within their functions." *Id.* § 288d(b).[1] Section 288 authorizes the President to withhold, withdraw or condition any of the specific privileges, exemptions, and immunities "in light of the functions performed by the organization," and to revoke the designation if the organization or its officers or employees abuse those privileges, exemptions, and immunities.

INTERPOL has not previously sought designation as an international organization under the IOIA, even though the organization has existed since 1923

---

[1] The Act also provides for exemptions from customs duties and internal revenue taxes on baggage and effects of the organization's officers, employees and representatives, and their families and households, *id.* § 288b, and exemptions for such individuals from laws regulating entry into or departure from the United States, alien registration and fingerprinting requirements, and requirements for registration as foreign agents. *Id.* § 288d(a). Unlike the immunity from suit and legal process afforded by § 288d(b), which is available to citizens of the United States who serve as officers or employees of the organization, the exemptions provided by §§ 288b and 288d(a) are not available for United States citizens.

and, since 1938, the United States has participated on a formal or informal basis pursuant to the authority provided to the Attorney General in 22 U.S.C. § 263a.[2] We understand the Secretary General of INTERPOL has decided to seek designation under the IOIA primarily because of the recent decision by the United States Court of Appeals for the District of Columbia in *Steinberg* v. *International Criminal Police Organization*, 672 F.2d 927 (D.C. Cir. 1981). In that decision the court ruled that *in personam* jurisdiction exists over INTERPOL under § 13423(a)(4) of the District of Columbia's long arm statute, which authorizes the exercise of personal jurisdiction over a nonresident "who caus[es] tortious injury in the District of Columbia by an act or omission outside the District" if the nonresident "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the District of Columbia." 672 F.2d at 930. We also understand that an additional consideration relevant to the Secretary General's decision is the negotiation by INTERPOL and the French Government of a new Headquarters Agreement, which will provide INTERPOL with expanded privileges and immunities under French law.[3] INTERPOL anticipates that the new Headquarters Agreement could serve as a model for similar grants of privileges and immunities in other countries, by agreement or by statute, if it becomes advisable or necessary to seek such protections.

## II. Analysis

The threshold issue is whether INTERPOL qualifies for designation by the President under the IOIA. To qualify for designation, the organization must be a "public international organization," *i.e.*, it must be "composed of governments as members." *See* H.R. Rep. No. 1203, 79th Cong., 1st Sess. (House Report). The United States must participate in the organization pursuant to treaty or "under the authority of any Act of Congress authorizing such participation or making an appropriation for such participation." 22 U.S.C. § 288. Although the statute itself does not impose any requirement that the organization have particular contacts with the United States, the House Report notes,

---

[2] 22 U.S.C. § 263a authorizes the Attorney General "to accept and maintain, on behalf of the United States, membership in the International Criminal Police Organization." The purposes of INTERPOL, as set forth in its Constitution, are:

(a) To ensure and promote the widest possible mutual assistance between all criminal police authorities within the limits of the laws existing in the different countries and in the spirit of the "Universal Declaration of Human Rights;" [and]

(b) To establish and develop all institutions likely to contribute effectively to the prevention and suppression of ordinary law crimes.

Constitution of the International Criminal Police Organization, Art. 2. The primary function of INTERPOL is to coordinate the exchange of information relating to crimes and criminal investigations and of certain humanitarian information among the member states, each of which is represented by a designated national central bureau.

[3] You have informed us that the Headquarters Agreement and the Exchange of Letters were approved by the INTERPOL General Assembly at its annual meeting in October 1982, and have been signed by the President of INTERPOL and by a representative of the Government of France. The one remaining step is submission of the Agreement and Exchange of Letters to the French Parliament for ratification, which we understand will take place this spring.

3

"as a practical matter, the bill will not be applicable to public international organizations to which the United States does belong but which do business entirely outside of the United States and which will therefore have no need for protection under the legislation." House Report, *supra*, at 1–2.

Under Executive Order No. 9698, 3 C.F.R. 508 (1946), the Secretary of State is charged with reviewing applications and proposing organizations to be designated pursuant to the Act. The Department of State, elaborating on the substantive criteria for eligibility under the Act, has established the following threshold requirements:

> (1) The applicant organization, and its officers and employees, must be doing sufficient business in the United States to warrant granting them the privileges of the legislation, and their activities must be such as reasonably to require the said privileges. In general, this will mean that the organization must have an office and staff located within the United States.
>
> (2) The Government of the United States must be a participating member of the applicant organization.
>
> (3) The participation of the Government of the United States must be pursuant to a treaty or under the authority of an Act of Congress authorizing such participation or making an appropriation for such participation.
>
> (4) The applicant organization must be composed principally of governments, as distinguished from private organizations, as members.
>
> (5) The applicant organization must not be scheduled for liquidation in the immediate future.

Bulletin of the Department of State, No. 128 (Feb. 20, 1946) (State Department Bulletin). We believe INTERPOL satisfies the threshold legal requirements for designation under § 288 and the State Department's guidelines. First, although there has been some confusion in the past about characterization of INTERPOL as a "public" or "private" organization, we are satisfied that INTERPOL would be considered a "public international organization" for the purposes of the IOIA.[4] INTERPOL is composed exclusively of states as members; each national central bureau responsible for liaison with INTERPOL's General Secretariat is an official law enforcement agency within its country's government; and INTERPOL's officers and Executive Committee members are elected by government officials from all member states. Second, although INTERPOL was not set up by treaty, convention, or executive agreement, the United States participates in INTERPOL pursuant to specific statutory authority. *See* 22

---

[4] A 1976 Comptroller General's Report on the United States' participation in INTERPOL noted, "various terms have been used to describe INTERPOL's status. The United Nations, the General Secretariat, and U.S. Treasury officials refer to it as intergovernmental; others call it a private or nongovernmental organization, and many perceive it as an organization in the mold of a United Nations." Report of the Comptroller General of the United States, "United States Participation in INTERPOL, The International Criminal Police Organization" 25 (Dec. 27, 1976).

U.S.C. § 263a.[5] Moreover, Congress has repeatedly authorized and appropriated funds for payment by the United States of dues to INTERPOL.[6] The only question that gives us some pause is whether the lack of any office or permanent staff in the United States precludes INTERPOL, as a matter of law, from eligibility for designation under the IOIA. The legislative history of the Act and the implementing State Department Bulletin suggest the statute is intended primarily to meet the needs of international organizations that have offices and staff in the United States. We have been told informally by the State Department that all of the organizations that have been designated under the IOIA to date have some permanent facilities and/or staff in the United States.[7] To our knowledge, however, no organization has requested and been denied designation on the ground that the statute applies only to organizations with offices or staff in the United States.

We do not believe the IOIA requires that an international organization seeking designation have offices, facilities, or permanent staff in the United States. The focus of the Act, as reflected in the Department of State's guidelines, is on the need of the international organization for the particular privileges, exemptions, and immunities provided by the Act, in order to carry out the organization's legitimate functions. Although the House Report recognizes that "as a practical matter" the statute would not apply to organizations that do business entirely outside of the United States, it does not suggest that an organization must have offices or staff in the United States in order to have sufficient contacts to warrant the protection of the Act. *See* House Report, *supra*, at 1. Similarly, the statement in the State Department Bulletin that "in general" an organization must have an office and staff in the United States is only an elaboration on the requirement that the organization "be doing sufficient business in the United States to warrant granting them the privileges of the legislation, and their activities must be such as reasonably to require the said privileges." Thus, the State Department Bulletin does not rule out the possibility that an organization with no office or staff located within the United

[5] The primary constitutive document of INTERPOL is its Constitution. The currently effective Constitution was adopted by the INTERPOL General Assembly in 1956. It provides that all countries then participating in the organization were deemed to be members unless they declared within six months of the effective date of the Constitution that they would not accept the Constitution. The United States has never submitted a declaration of non-acceptance.

[6] The current version of § 263a provides that dues and expenses for the membership of the United States in INTERPOL "shall be paid out of sums authorized and appropriated for the Department of Justice." Pub. L. No. 95–624, § 21(a), 92 Stat. 3459, 3466 (1978).

[7] A wide variety of organizations, with differing structures, membership requirements, and functions, has been granted designation under the IOIA. These include, for example, the African Development Fund, the Food and Agriculture Organization, the Great Lakes Fishery Commission, the Inter-American Tropical Tuna Commission, the International Bank for Reconstruction and Development, the International Coffee Organization, the International Cotton Advisory Committee, the International Maritime Satellite Organization, the International Pacific Halibut Commission, the International Telecommunications Union, the International Wheat Advisory Committee, the Organization of African Unity, the Organization of American States, the United Nations, the World Health Organization, and the World Meteorological Organization. Most recently, the President has designated the Multinational Force and Observers and the International Food Policy Research Institute as public international organizations for purposes of the IOIA. See Exec. Order No. 12359, 3 C.F.R. 180 (1982).

States may nonetheless be able to demonstrate a nexus with the United States that creates a reasonable need and basis for receipt of the privileges, exemptions, and immunities provided by the Act.

Therefore, we believe the lack of an office and permanent staff in the United States does not make INTERPOL ineligible as a matter of law for designation under the IOIA. The clear legislative intent of the statute, however, is to limit the protection afforded by the Act to international organizations that can demonstrate a particularized need for such protection. We thus must consider whether the contacts INTERPOL has with the United States, which consist primarily of frequent communications by radio, teletype, and mail to the USNCB and occasional visits by INTERPOL officials or employees to consult with appropriate U.S. law enforcement personnel, provide a sufficient nexus to trigger designation under the IOIA.

We believe INTERPOL's contacts are sufficient, particularly in light of the *Steinberg* decision, to satisfy the threshold legal requirements for designation under the IOIA. The essential function of INTERPOL and its primary usefulness to United States law enforcement efforts lie in the exchange of information with the national central bureaus, including the USNCB. The ruling in the *Steinberg* case potentially exposes INTERPOL to suit in the United States, at least within the District of Columbia, for performance of that function.[8] It is not clear at this time how substantial that exposure is, or how the risk of suit will affect INTERPOL's ability or willingness to continue the exchange of information with the USNCB.[9] We are satisfied nonetheless that the Steinberg ruling demonstrates INTERPOL's need for at least some of the protections afforded by designation under the IOIA, and therefore we conclude INTERPOL would satisfy the minimum threshold legal requirements for such designation.

You have also asked us to consider whether the privileges, exemptions and immunities available to INTERPOL under the IOIA should be limited or conditioned, if a decision is made to grant INTERPOL designation as a public international organization. That decision rests ultimately on policy considerations that are not appropriately addressed by this Office. As a matter of legal analysis, however, we note that § 288 gives the President the authority to place conditions or limitations on the available privileges, exemptions, and immunities, "in light of the functions performed by the organization." Although we do not interpret this language to impose any mandatory obligation upon the President to limit the designation of organizations in any specific manner, we believe it would be appropriate in light of INTERPOL's specific and somewhat limited need for immunity for the President to limit the privileges, exemptions, and immunities accorded to INTERPOL to those that are necessary to preserve and protect the functions performed by INTERPOL in the United States.

---

[8] In practical terms, suits in the District of Columbia would be INTERPOL's primary concern, since most of the information transmitted to the United States by INTERPOL is sent to the USNCB in the District of Columbia. Consequently, most plaintiffs alleging injury from such transmissions could probably establish jurisdiction and venue within the District.

[9] It is certainly relevant that the Secretary General of INTERPOL deems the *Steinberg* ruling of sufficient concern to warrant application for designation under § 288 of the IOIA.

Because INTERPOL does not have an office or staff in the United States, and therefore has no property, assets, archives, or permanent employees located in the United States, several of the specific privileges, exemptions, and immunities available under the IOIA may be inapplicable or irrelevant to INTERPOL.[10] These include the following:

> (1) capacity to acquire and dispose of real and personal property;[11]
>
> (2) immunity of property and assets from search and inviolability of archives;[12]
>
> (3) exemptions from customs duties and internal revenue taxes with respect to goods or articles imported into the United States by the organization;[13] and
>
> (4) immunity of the organization from property taxes.[14]

Several other privileges, exemptions and immunities specified in the IOIA could, however, be considered critical to preservation of INTERPOL's functions in the United States, and therefore should be specifically included in the designation order. These would include the following:

> (1) immunity of the organization from suit and judicial process;[15]
>
> (2) privileges for official communications;[16] and
>
> (3) immunity of representatives of foreign governments in or to the organization and officers and employees of the organization from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as representatives, officers or employees.[17]

---

[10] This conclusion is based on the facts available to us with respect to INTERPOL's contacts with the United States. It may be that additional considerations exist or may exist in the future that would warrant application of the particular privileges, exemptions, or immunities listed in the text. We do not suggest that, as a matter of law, the President must limit INTERPOL's designation to exclude those privileges, exemptions and immunities.

[11] 22 U.S.C. § 288a(a). That section also provides that a designated international organization shall have the capacity to contract and to institute legal proceedings. Although we are not aware of any particular need for INTERPOL to be able to enter into contracts or to institute legal proceedings in the United States, that authority is not as clearly unrelated to INTERPOL's activities within the United States as is the authority to acquire and dispose of property.

[12] 22 U.S.C. § 288a(c). We understand the term "archives" to mean permanent files maintained by the organization. To our knowledge, the only archives maintained by INTERPOL are located in France. The protection for archives of international organizations available under the IOIA would not extend to information within the possession, custody, or control of a United States citizen or agency that may have originated in the archives of the international organization. Thus, even if it is deemed appropriate to provide in the executive order for the inviolability of INTERPOL's archives, that protection would not extend to information maintained by the USNCB that originated with INTERPOL. As the USNCB's Privacy Act Notice points out, the records maintained by the USNCB are separate and distinct from records maintained by INTERPOL. *See* 46 Fed. Reg. 60328 (1981). In the hands of the USNCB, those records are clearly subject to all applicable federal laws and regulations.

[13] 22 U.S.C. § 288a(d).

[14] 22 U.S.C. § 288c.

[15] 22 U.S.C. § 288a(b).

[16] 22 U.S.C. § 288a(d).

[17] 22 U.S.C § 288d(b).

7

Finally, it is not clear to us whether the exemptions and immunities from import taxes, entry and exit regulations, alien registration and fingerprinting requirements, and foreign agent registration requirements provided in §§ 288b and 288d(a) of the Act for alien officers, employees, and representatives of designated organizations would be necessary or appropriate to preserve and protect the functioning of INTERPOL in the United States. We understand that officials and employees of INTERPOL travel to the United States with some frequency for consultations with the USNCB or other United States law enforcement personnel, and that meetings or conferences of INTERPOL may be held in the United States in the future. If INTERPOL and the Department of State believe some or all of the exemptions provided by §§ 288b and 288d(a) are necessary or advisable to facilitate such visits, the designation order could appropriately include those exemptions and immunities.

If the designation order is limited as we discuss, the privileges and immunities afforded INTERPOL under United States law would be considerably more narrow than those afforded INTERPOL under French law pursuant to the new Headquarters Agreement. The breadth of the privileges and immunities provided by the Headquarters Agreement reflects that INTERPOL maintains its headquarters and staff in France and therefore needs additional protections under French law that would not be necessary in the United States, as we have discussed. With one exception, the privileges and immunities we suggest may be critical to INTERPOL's functions in the United States, *i.e.*, immunity of INTERPOL and its officers, employees and representatives from suit and legal process, and privileges for official communications, are comparable in scope to analogous privileges and immunities provided in the Headquarters Agreement.[18] The one exception is the provision in the Headquarters Agreement for full diplomatic privileges and immunities for the Secretary General of INTERPOL. Under the IOIA, the privileges and immunities accorded to officials or employees of designated international organizations must be limited to the specific privileges and immunities set out in the Act, and cannot extend to full diplomatic privileges. Section 288e(c) provides that:

> No person shall, by reason of the provisions of this subchapter, be considered as receiving diplomatic status or as receiving any of the privileges incident thereto other than such as are specifically set forth herein.

22 U.S.C. § 288e(c). Therefore, the Secretary General of INTERPOL could not be accorded full diplomatic privileges under United States law.[19]

---

[18] We understand that the Headquarters Agreement provides, *inter alia*, for limited immunity from legal process for the Organization, inviolability of official correspondence, and immunity from legal process for representatives, officials, and members of the Organization's staff with respect to acts performed in connection with their official duties.

[19] The primary practical effect of this limitation is to restrict the immunity of the Secretary General from suit and legal process under United States law to acts performed in his official capacity or within his functions as Secretary General. The House Report notes this limitation was intentional:

Continued

In addition to the specific privileges and immunities provided in the Headquarters Agreement, the accompanying Exchange of Letters between INTERPOL and the French Government requires INTERPOL to establish a Supervisory Board to verify the accuracy of personal information maintained by INTERPOL in its internal archives in France and to supervise INTERPOL's collection, maintenance, and dissemination of such information. We understand agreement on such a Supervisory Board was a precondition imposed by the French Government for its assent to the specific privileges and immunities set out in the Headquarters Agreement. We believe the creation of the Supervisory Board, although not legally relevant to the question of INTERPOL's eligibility for designation under the IOIA, could be advantageous in dispelling concerns that may exist both within and outside the federal government about the possibility of abuse by INTERPOL of its ability to collect and exchange personal information outside the reach of any nation's laws.[20] The *Steinberg* litigation demonstrates that some concern exists about the possibility of injury to innocent individuals by INTERPOL's dissemination of erroneous information linking those individuals with criminal investigations, concerns that could be exacerbated if INTERPOL seeks immunity from suit under U.S. law. We believe those concerns could be alleviated somewhat once the Supervisory Board is in operation.

Because we do not believe the existence or operation of the Supervisory Board is a legal prerequisite to designation of INTERPOL under the IOIA, we do not suggest the designation be conditioned on the existence of the Board. However, it may be advisable to describe, either in the executive order itself or in an accompanying statement, the operation of the Supervisory Board and the protections afforded by the Board for United States citizens.

RALPH W. TARR
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[19] (. . . continued)

> [T]he immunity from suit to be extended to officers and employees of international organizations is limited to immunity for acts performed by them in their official capacity whereas diplomatic officers enjoy full immunity from legal processes in this country.

House Report, *supra*, at 6.

[20] Nothing in the IOIA or its legislative history suggests Congress contemplated that the privileges, exemptions, or immunities available under the Act should be conditioned on the existence of some alternative form of redress for harms caused to United States citizens by activities of designated international organizations. Insofar as we are aware, no such conditions have been placed on other designated organizations.