**Leon STEINBERG, Plaintiff,**

v.

**INTERNATIONAL CRIMINAL POLICE ORGANIZATION, et al., Defendants.**

Civ. A. No. 77–0038.

United States District Court, District of Columbia.

Oct. 29, 1984.

Robert A. Seefried, Seymour, Seefried & Hoffman, Chartered, Washington, D.C., for plaintiff.

Bruno A. Ristau, Joel E. Leising, Washington, D.C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Following a remand of this case from the Court of Appeals,[1] plaintiff requested that this Court grant him a default and attorney's fees.[2] By an order dated September 15, 1983, the Court denied the default but granted the attorney's fees portion of the motion. The Court found that plaintiff had suffered substantial prejudice and expense as a consequence of the recalcitrance displayed by defendants as they failed for almost four years to litigate in accordance with the Federal Rules of Civil Procedure. Accordingly, the Court awarded to plaintiff fees for undertakings directly attributable to defendants' lack of compliance with the Rules.

On November 14, 1983, plaintiff filed his statement in support of the fees award. Defendants responded by a motion for reconsideration of the September 15, 1983 order, basically on the grounds that the Court lacks jurisdiction[3] and that the substance of the fees claim was not sufficiently substantiated.[4]

Because of defendants' peculiar litigation tactics,[5] the case is here in a rather unusual posture, and it is necessary therefore to consider it from several analytical points of view. But, however, viewed, it is clear that

---

**1.** *Steinberg v. Interpol,* 672 F.2d 927 (D.C.Cir. October 23, 1981), *on denial of petition for rehearing,* 672 F.2d at 934 (February 16, 1982).

**2.** The attorney's fee request and the Court's discussion herein also include costs.

**3.** This argument includes both a claim of lack of personal jurisdiction and a claim of immunity.

**4.** Defendants also moved for the production of the time and billing records of plaintiff's counsel. Plaintiff has filed an opposition to that motion.

**5.** As Chief Judge Robinson accurately noted:

One can readily sympathize with Steinberg's frustrations over the exceedingly peculiar manner in which this case is being 'defended.' Interpol, perhaps wishing to dramatize the argument that it has no existence in or palpable contact with this jurisdiction, has, until the instant petition, refused to materialize in court; instead, its thoughts and desires have been imparted through the United States acting as medium. Yet no one has revealed to us any special dispensation relieving Interpol of an obligation to abide by the Civil Rules just as any other mortal.

the motion for reconsideration must be denied.

## I

The premise underlying defendants' motion is that they are entitled to a decision on their jurisdictional defenses before the Court resolves the sanctions issue. Their position is in error for several reasons (see *infra*). Indeed, to the extent that the Court of Appeals addressed this question, it, too, decided it against defendants.

After this Court had entered its attorney's fees order, six years after the complaint had been filed, and for the first time in this Court, defendants proceeded, by way of a motion for reconsideration, to make all the points regarding jurisdiction they should have advanced a long time ago, certainly long before plaintiff had to incur extensive costs to set this case on its proper and legitimate course. These arguments now come too late.

The Court of Appeals suggested in the course of its consideration of this case that on remand this Court address directly plaintiff's motion for a default judgment and for sanctions. Two of the judges of the three-judge panel, Robinson, C.J. and Wright, J., stated in their concurrence that the Court of Appeals had been careful "not to obstruct any path the District Court might properly travel on remand" with respect to these two subjects. 672 F.2d at 934. Explained Chief Judge Robinson for the concurring judges:

> As the case thus remains, Interpol stands before the [district] court an unresponsive defendant, and Rules 8 and 55 may affect its freedom now to contest the allegations of the complaint. Having decided to sit out the game rather than challenge Steinberg's hand compliably with the rules, Interpol must deal as best it can with the consequences of its gamble.

*Id.* And the Chief Judge went on to state that the question whether defendants may even present evidence on the jurisdictional issue rested with this Court which, in that context, was to consider the effect of Rule 8(d),[6] Rule 55,[7] and "any question of sanctions." *Id.*

This Court accordingly proceeded, following the remand, to consider both the default and the sanctions issues as the Court of Appeals had directed and, as noted, it ultimately decided that, on balance, a default should not be granted, but that defendants' behavior justified the imposition of attorney's fees. It must be remembered in this connection that plaintiff is an individual with limited means litigating against a vast and shadowy international organization which for several years forced him to expend funds, time, and energy to litigate in two courts with respect to unnecessary issues. That is precisely the type of situation in which the award of attorney's fees *now*—rather than after defendants have finally worn down plaintiff's ability to litigate further—is most appropriate.

■ By denying plaintiff's motion for a default and at the same time requiring defendants to compensate plaintiff for the unnecessary expenses incurred as a result of their recalcitrance, the Court carefully exercised its discretion so as to permit them to assert their potentially meritorious defenses on the merits, while not allowing them to profit by their noncompliance with the Federal Rules of Civil Procedure. In the view of this Court, defendants should not be rewarded for their recalcitrance by permitting them, at this late date, to litigate issues as a means of avoiding sanctions which were properly imposed at a time when they were adamantly refusing to litigate in accordance with the Rules.

■ This Court has, of course, substantial discretion with respect to motions for reconsideration.[8] It will exercise that

---

6. Rule 8(d) authorizes treatment of material allegations of the complaint as admitted where no answer or motion is filed.

7. Rule 55 authorizes the entry of default judgments.

8. Interpol has not specified the procedural basis for its motion for reconsideration. If the mo-

discretion by declining to set aside its previous sanctions ruling when the arguments in favor of such a course were made so late with so little excuse,[9] and it will deny defendants' motion on that basis. That holding is buttressed by several alternative determinations which lead to the same result, as follows.

## II

■ The Court's decisions on the default and the sanctions issues were closely related. In effect, the Court ruled that it would exercise its discretion to deny plaintiff's request for a default provided that defendants compensated him for the expenses he had incurred in coping with their improper and dilatory litigation tactics. Since substantial elements of judgment and balancing were involved,[10] the Court could have granted the default [11] and thereafter, upon defendants' application for relief from that default, conditioned such a grant upon the payment of attorney's fees and costs which were occasioned by defendants' manipulations. See *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C.Cir.1966); 10 C. Wright & A. Miller, Federal Practice and Procedure Civil § 2700, at 539.[12]

The Court here decided to compress the two proceedings into one, but conceptually the result is the same as if they had been decided separately. If defendants were now successful in their claim that attorney's fees should not now be awarded, the Court would be justified in reconsidering the default issue and, upon such reconsideration, the balance on that issue might well "tip" against defendants.

■ Moreover, in that posture the default would not necessarily be set aside merely because defendants asserted jurisdictional defenses. The existence of such

tion is characterized as a motion under Rule 60(b) for relief from a judgment or order, it is clear that its grant or denial is subject to the broad discretion of the Court. *Harjo v. Andrus*, 581 F.2d 949, 953 (D.C.Cir.1978); see also, 11 C. Wright & A. Miller, Federal Practice and Procedure Civil § 2857. If, on the other hand, the motion is considered a motion to reconsider an interlocutory order, the Court enjoys even broader discretion in deciding whether to grant the motion. The Advisory Committee notes to the 1946 Amendment, which modified the language of Rule 60(b) to provide that it would afford a basis for relief from "final" orders, indicate that "interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." As indicated in the text, this Court is convinced that justice requires the imposition of sanctions in this case, not relief from them.

9. Interpol's claim that the imposition of sanctions against it is unfair because its improper litigation strategy was undertaken in reliance upon advice from officials of the United States Department of Justice is entirely unpersuasive. Even if it is true that the Justice Department counseled or encouraged Interpol's improper litigation tactics, Interpol's reliance on such advice cannot be held to excuse it from the obligation it shares with all litigants to proceed in accordance with the Federal Rules of Civil Procedure. As Chief Judge Robinson noted in his concurrence to the Court of Appeals' denial of Interpol's petition for rehearing,

Interpol could readily have utilized the mechanisms provided by the Federal Rules ... enabling participation in the case without jeopardizing its arguments that personal jurisdiction was lacking; instead, *it chose* simply to ignore Steinberg's complaint.

672 F.2d at 933 (citation omitted) (emphasis added). That another organization may share the blame for Interpol's deliberate disregard for the Federal Rules does not absolve it of responsibility for its behavior.

10. The Court carefully noted on September 15, 1983, that various factors "tip the balance" against the award of a default judgment. Memorandum Opinion at 5.

11. In its September 15 Opinion, the Court found that plaintiff had experienced prejudice as a result of the delay and additional expense engendered by defendants' recalcitrance. Memorandum Opinion at 5. The Court recognized, however, that conceivably the existence *inter alia* of potentially meritorious defenses might ultimately require it to set aside a default judgment, in which case the primary effect of granting such a judgment would be further to delay resolution of the case, with resulting prejudice to the plaintiff. *Id.* at 4 n. 7. Ultimately, of course, the Court decided to exercise its discretion to fashion the more practical remedy challenged here by defendants.

12. The Court specifically took note of that contingency. Memorandum Opinion at 4 note 7.

defenses is but one factor in the equation, for it is clear that a party against which a default has been entered is not entitled *ipso facto* to have that default set aside merely because it may have meritorious defenses, including jurisdictional defenses. See *Jackson v. Beech,* 636 F.2d 831 (D.C. Cir.1980). See generally, *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) and its progeny, which hold that federal courts have jurisdiction to determine their jurisdiction, and that their orders are of binding effect as long as the assertion of jurisdiction is not frivolous. See Wright, *Federal Courts* at 59–62 (3rd ed. 1976).

■ Plaintiff's assertion of diversity jurisdiction in this case is clearly not frivolous, and the Court has a reasonable basis for concluding that it has subject matter jurisdiction. In these circumstances, it would be unreasonable to hold that a definitive subject matter jurisdiction determination must be reached before the Court may impose sanctions. The subject matter jurisdiction determination turns on complicated factual and legal questions concerning Interpol's character (governmental, intergovernmental, or private organization) the resolution of which will necessarily require Interpol's cooperation in the litigation. In such a circumstance the Court is entitled to rely on plaintiff's entirely credible assertion of jurisdiction, and to issue an order which is enforceable unless and until Interpol obtains a reversal.

In short, the default-sanctions relationship represents a separate, independent basis for a denial of reconsideration.

### III

The September 15, 1983 Order represented an exercise of the Court's power to assess sanctions to protect the integrity of

the judicial process. There is nothing in the motion for reconsideration to cause a change in that conclusion.

While the jurisdictional defenses, were they ultimately established, would act to bar the entry of a judgment on the merits against defendants and might act also to preclude the entry of an attorney's fee order as part of such judgment, fees assessed as a sanction for refusal to comply with the Federal Rules of Civil Procedure are in an entirely different category. Defendants' persistent failure to participate in this litigation in compliance with the Rules has unnecessarily complicated the resolution of this lawsuit (and incidentally delayed decision on the very jurisdictional issues now raised by defendants for the first time). The Court need not and will not allow defendants to use the results of their recalcitrance to shield them from sanctions for their improper behavior.[13]

■ It is clear that the Court possesses sufficient personal jurisdictional over defendants for the purpose of imposing sanctions for their refusal to comply with the Rules applicable to all litigants. As the Court of Appeals recognized, defendants' frequent contact and close relationship with the Department of Justice, which is located in this country and in this district, amply satisfied the due process clause "minimum contacts" threshold. See 672 F.2d 927, 932. That court also recognized that plaintiff has made a strong *prima facie* showing that this Court possesses personal jurisdiction over defendants under the District of Columbia "long-arm" statute, D.C.Code § 13–423(a)(4). *Id.* at 931.[14]

■ Likewise unavailing is defendants' contention that they are immune under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1330, and for that rea-

---

**13.** See *Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinea,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Ilan-Gat Engineers v. Antigua International Bank,* 659 F.2d 234, 239 (D.C.Cir.1981).

**14.** In any event, by submitting themselves, however belatedly, to this Court's jurisdiction, de-

fendants have conferred on this Court jurisdiction sufficient to decide whether personal jurisdiction exists, and to issue and enforce any orders necessary to make such a determination. See *Campagnie des Bauxites, supra;* see generally, 5 C. Wright & A. Miller, Federal Practice and Procedure Civil § 1373 (1969 and Supp.1984).

son exempt from sanctions. The ultimate resolution of the immunities issue will require additional factual and legal determinations, and it cannot definitively be decided at this time. But whatever may be the outcome of that question, the FSIA does not afford defendants protection against sanctions for their flouting of the Federal Rules of Civil Procedure. In enacting the FSIA, Congress undoubtedly intended to immunize foreign sovereigns from liability and the burden of extended litigation in certain types of cases that might be filed in the federal courts. But in recognizing important principles of international law and foreign sovereignty, the Congress cannot be deemed to have immunized FSIA-covered parties from compliance with basic rules of federal litigation. As the cases involving parties assertedly protected by the FSIA suggest,[15] the proper course for such a party is to respond to the complaint and appear in court for a prompt judicial determination of the immunity question. If the allegedly protected party simply refuses to appear, it runs the risk of a default judgment, sanctions, or both.

For the reasons stated, defendants' motion that the Court reconsider that part of its September 15, 1983 Order awarding plaintiff attorney's fees and costs will be denied.

IV

■ With regard to the amount of plaintiff's fee and cost request, plaintiff's latest submission to the Court, while more complete than heretofore, is still inadequate. The Court of Appeals has repeatedly indicated that the plaintiff in Equal Access to to Justice Act cases must submit sufficient information in support of fee requests to enable the District Court to make an independent determination whether the claimed hours are justified.[16] Although the instant attorney's fee order is not being entered pursuant to that Act, some of the more general principles—even if not all the refinements—are applicable. Accordingly, plaintiffs will be required to submit within twenty days an amended fee request that provides adequate information to permit the Court to make a judgment as to the reasonableness of the requested fees. The itemized account should identify the attorneys who worked on the case and indicate their experience level, their hourly billing rate, the number of hours they worked on the case and the substance of their work. The account should also indicate the basis for the claim that the work performed or costs incurred were directly attributable to defendants' lack of responsiveness. See Memorandum Opinion at 8.[17] It may be expected that the submission of such papers will permit the prompt resolution of the sanctions issue so that the Court thereafter can, finally, proceed to address the substantive issues in this case.

---

**15.** See, *e.g., Persinger v. Islamic Republic of Iran,* 729 F.2d 835 (D.C.Cir.1984); *Rex v. Cia Pervana de Vapores, S.A.,* 660 F.2d 61 (3rd Cir.1981).

**16.** See, *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, No. 83–1839 (D.C.Cir. September 28, 1984); *National Ass'n of Concerned Veterans v. Sec'y of Defense,* 675 F.2d 1319, 1327 (D.C.Cir. 1982); *Environmental Defense Fund v. Environmental Protection Agency,* 672 F.2d 42 (D.C.Cir. 1982); *Copeland v. Marshall,* 641 F.2d 880 (D.C. Cir.1980) (en banc).

**17.** There is no basis for going beyond that and to require plaintiff to produce the time and billing records of his counsel. Defendant's motion to that effect will accordingly be denied.