**Roger FANDEL et al., Appellants,**

v.

**ARABIAN AMERICAN OIL COMPANY,**
a corporation, Appellee.

**No. 18883.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 4, 1965.

Decided Feb. 25, 1965.

Mr. Michael J. Stack, Jr., Washington, D. C., for appellants.

Mr. Alexander M. Heron, with whom Messrs. John A. Whitney, Washington, D. C., and Thomas F. Barry, New York City, were on the brief, for appellee.

Before BURGER, WRIGHT and McGOW-AN, Circuit Judges.

McGOWAN, Circuit Judge.

Appellants, a husband and wife who reside in California, sued appellee, a Delaware corporation, in tort for injuries sustained by the husband in Saudi Arabia. In its answer appellee admitted its Delaware incorporation and that it had a place of business in New York City.[1] It moved to quash service of process upon it in the District of Columbia. The District Court granted the motion and dismissed the action for lack of jurisdiction over the person of appellee, on the ground that it was not "doing business" in the District within the meaning of either Section 334 of Title 13 of the D.C. Code, or Section 1391(c) of Title 28 of the U.S.Code.[2] We affirm.

---

1. In the course of the oral argument before us, it appeared that appellants have pending in both New York and Delaware suits against appellee on the same cause of action they are pressing in the District of Columbia.

2. The full texts of the two statutes are as follows:

    13 D.C.Code § 334:

    "(a) In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

    "(b) When a foreign corporation transacts business in the District without having a place of business or resi-

## I

The facts appear from the pleadings, an affidavit filed by a vice-president of appellee in charge of its Washington office, and a deposition taken by appellants of his assistant. Appellee has maintained for several years a six-room office in a downtown Washington office building, occupied by five people, two of whom are secretarial employees. It was upon one of the latter that service of process was made. The payroll for this office is $10,000 per month, and appellee is listed in the telephone book. Appellee's business is that of producing, refining, and selling oil and gas, all of which are done in Saudi Arabia. All deliveries by appellee are made in Saudi Arabia, with the exception of some crude oil that is delivered at a pipeline terminus in the Republic of Lebanon. None of such business is solicited, by advertising or otherwise, in the District of Columbia, and no contracts with respect to it are made there.

What appellee does do in the District is to maintain continuing relationships with the State Department and other executive agencies of the United States Government, with diplomatic missions accredited to that Government, and with educational and international organizations, private and public, interested in, or informed about, the Middle East generally and Saudi Arabia in particular. Information about appellee and its opera-

tions and experience in Saudi Arabia is made available to these entities, and information received from them is reported to the executive staff directing business operations in Saudi Arabia. Military personnel going to the Middle East are, upon their request, briefed by appellee on the social and political conditions they may expect to encounter. There are occasional contacts between appellee's people and the Washington representatives of other American oil companies who transact business with appellee in the Middle East, but the record before us shows these to be essentially social in nature.[3]

## II

From the standpoint of the contribution made to the advancement of the business operations of an enterprise like appellee, a plausible claim can be made that its "state department" is as important as its "sales" or "accounting" or "production" departments. And, even on the relatively meagre record before us, it appears that the Washington office of appellee is, if not the sole, at least a significant element in its diplomatic and intelligence apparatus. But that element is centered in Washington simply because of what Washington is, namely the capital city where public and private persons, with interests or responsibilities in the Middle East, foregather and make their contribution, real or fancied, to the formulation of official policies.

dent agent therein, service upon any officer or agent or employe of the corporation in the District is effectual as to actions growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the District."

28 U.S.Code § 1391(c):

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

3. The so-called "off-taking companies" are Socony Mobil, Jersey Standard, Texaco, and Standard of California. After testi-

fying in his deposition that on occasion he exchanged information with representatives of these companies about "Middle Eastern developments" and the "political situation" there, appellee's officer characterized this activity generally in this wise:

"Q. Now, you said that you sometimes have an exchange of social and political views with off-taking companies—with employees of off-taking companies—is that right? A. I meet them socially at various functions—Desk and Derrick Club, and so forth. We discuss what we have read in the New York Times."

Thus it would appear that the functioning of Washington's private intelligence systems is not unlike that of their official counterparts.

This is not quite like the company whose agents in Washington are seeking contracts, either with our own Government or with other governments represented in Washington. See Mutual Int'l Export Co. v. Napco Indus. Inc., 114 U.S. App.D.C. 392, 316 F.2d 393 (1963). Appellee's presence in Washington, in terms of the carrying on its business of producing and selling oil, is different in kind, if perhaps not in degree insofar as its purely physical manifestations are concerned. In any event, it is a presence of a kind we think this court has heretofore regarded as falling outside the range of Congressional contemplation of the scope of "doing business" as that phrase is used in 13 D.C.Code § 334.[4] See Traher v. De Havilland Aircraft of Canada, Ltd., 111 U.S.App.D.C. 33, 294 F.2d 229 (1961), cert. denied, 368 U.S. 954, 82 S.Ct. 397, 7 L.Ed.2d 387 (1962); Fehlhaber Pile Co. v. Tennessee Valley Authority, 81 U.S.App.D.C. 124, 155 F.2d 864 (1946); Mueller Brass Co. v. Alexander Milburn Co., 80 U.S.App.D.C. 274, 152 F.2d 142 (1945); Layne v. Tribune Co., 63 App.D.C. 213, 71 F.2d 223, cert. denied, 293 U.S. 572, 55 S.Ct. 83, 79 L.Ed. 670 (1934); Neely v. Philadelphia Inquirer Co., 61 App.D.C. 334, 62 F.2d 873 (1932). These cases, although embodying variously different factual circumstances, seem to us to constitute a recognition that Washington presents many business organizations with special needs for a continuous and ponderable physical presence there, which needs are not those customarily associated with strictly commercial operations; and that the purpose of Congress was not to make that presence in every case a base for the assertion of personal jurisdiction.

4. Appellants argue alternatively that, because the elements of diversity jurisdiction are allegedly present, they may be deemed to have secured jurisdiction over appellee without reference to 13 D.C. Code § 334. This approach admittedly rests, however, upon a claim that, where service of process has been effected as provided in Fed.R.Civ.P. 4(d) (3), jurisdiction may be established without look-

We are construing what a statute does, and not determining what the furthest reach of legislative power could be consistent with constitutional limitations. See International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). We do not think that the presence of appellee in the District, for the purposes and to the degree shown by this record, was conceived of by Congress as exposing it to suit here by Californians in respect of personal injuries sustained in an accident in Saudi Arabi.

Affirmed.

ing beyond that rule and the federal venue statute, 28 U.S.C. § 1391(c). But this claim is, in our view, unavailing here, and need not be considered by us, because appellants have not, as we think they could not have, seriously contended that the service made in this case was in accordance with the requirements of Rule 4(d) (3).