Carol E. RAMAMURTI, as Administratrix for the Estate of Chinni P. Ramamurti, Plaintiff,

v.

ROLLS–ROYCE LTD., Aerospatiale (SNIAS) (Societe National Industrielle Aerospatiale), Air India, Inc. and Indian Airlines Corporation, Defendants.

J. Willard NALLS, Jr., as Administrator of the Estate of John C. Abraham, Plaintiff,

v.

ROLLS–ROYCE LTD., Aerospatiale (SNIAS) (Societe National Industrielle Aerospatiale), Air India, Inc., and Indian Airlines Corporation, Defendants.

Civ. A. Nos. 77–1740, 77–2156.

United States District Court, District of Columbia.

July 25, 1978.

**408**

Philip Silverman, Speiser, Krause & Madole, Washington, D. C., for plaintiffs in both actions.

Charles Lister, Covington & Burling, Washington, D. C., for defendant Rolls-Royce Ltd. in C.A. No. 77–1740.

Thomas J. Whalen, Condon & Forsyth, Washington, D. C., for defendant Indian Airlines Corporation in both actions.

## MEMORANDUM

SIRICA, District Judge.

These diversity actions arise out of the 1976 crash of an Indian Airlines Corporation airplane in the Republic of India. Two of the defendants in C.A. No. 77–1740—Rolls-Royce Ltd.[1] (hereinafter "Rolls-Royce") and Indian Airlines Corporation—have moved to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In C.A. No. 77–2156, service never having been effected on Rolls-Royce, only Indian Airlines has so moved.

Although service can always be accomplished in a *manner* authorized by Rule 4 of the Federal Rules of Civil Procedure, it is largely settled that, in a diversity case, questions of amenability to service and personal jurisdiction are determined by reference to the law of the forum state. *See Arrowsmith v. United Press International,* 320 F.2d 219 (2d Cir. 1963).

Neither plaintiff makes any claim that his or her claims for relief arose from any of the defendants' activities in the District of Columbia or that the claims are in any other manner connected with the District. Rather, all parties to the instant motions apparently agree that the relevant jurisdictional provision as to both moving

---

1. The complaints name "Rolls-Royce (1971) Limited." An affidavit accompanying Rolls-Royce's motion explains that since March 1977, its name has been "Rolls-Royce Ltd."

defendants is D.C.Code § 13–334(a).[2] That section provides a basis for personal jurisdiction as follows:

*Service on foreign corporations*

(a) In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

D.C.Code § 13–334(a) (1973). Under this provision, as long as a foreign corporation is "doing business" in the District, it is amenable to service here, regardless of any connection between the claim for relief and this jurisdiction. "Doing business" has been defined as "any continuing corporate presence in the forum state directed at advancing the corporation's objectives." *Price v. Griffin,* 359 A.2d 582, 586 (D.C.App. 1976.)

Defendant Rolls-Royce, a corporation organized under English law, is an instrumentality of the government of the United Kingdom with its principal place of business in London. Service on Rolls-Royce was accomplished through service upon a person employed in the Washington, D.C. office of Rolls-Royce, Inc.[3] (hereinafter "RRI"), a wholly-owned subsidiary of Rolls-Royce Holdings North America Ltd., a Canadian corporation which is itself a wholly-owned subsidiary of defendant Rolls-Royce.

Rolls-Royce emphasizes that the separate corporate existence of RRI cannot be ignored, and that whatever is being done in the District of Columbia is being done by RRI and not by the parent corporation. It is true that some courts have allowed assertion of personal jurisdiction over a parent corporation via service on a subsidiary on an "alter ego" or "piercing the veil" theory, *i. e.,* disregarding the separate corporate existence of the two entities so that valid service upon one is automatically valid service on the other. The Court need not consider these theories with regard to Rolls-Royce, however, because it is clear that whatever activities are carried out in the District by RRI are entirely *on behalf of* Rolls-Royce. As explained in the affidavit of RRI's District of Columbia manager: "[RRI] exists to provide marketing information and service support for engines manufactured by Rolls-Royce and sold by Rolls-Royce to operators within the United States. It does not design or manufacture aircraft engines or engine parts. It does not sell aircraft engines." In other words, the defendant uses its American subsidiary as its agent for the provision of marketing and service support for its products used in the United States.

The business conducted here by RRI is not its own business, but that of the parent corporation. The effect would be the same if Rolls-Royce chose to station an individual employee or an unrelated corporate agent in the District to perform these same marketing and service functions. The fact that these activities are conducted by a separate, yet closely related, corporation is hardly a basis for distinction. As summarized by a leading treatise: "[I]f the subsidiary is merely an agent through which the parent conducts business in the jurisdiction . . . then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary." 4 Wright & Miller, *Federal Practice and Procedure,* § 1069, at 256 (1969). *Accord, Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 419–20 & n. 13 (9th Cir. 1977).

---

**2.** Section 334 is the predecessor to the "modern" D.C. long-arm statute, adopted by Congress in 1970. District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L.No. 91–358, § 132(a), 84 Stat. 473 (codified at D.C.Code §§ 13–401 to 434 (1973)). Section 334 continues to exist as a basis for personal jurisdiction along side the more comprehensive long-arm provisions in chapter 4 of title 13 of the D.C.Code. *See* D.C.Code § 13–401 (1973).

**3.** A copy of the summons and complaint was left with the secretary of Alan Gray. Gray is the manager of the RRI Washington office. Affidavit of Gray, at 1.

■ The real issue with regard to Rolls-Royce then is whether RRI's activities in the District on behalf of Rolls-Royce constitute "doing business" within the meaning of section 344(a). RRI maintains an office facility in Northwest Washington and employs four professional engineers and two clerical assistants in the office on a permanent basis. The office is

> engaged in responding to inquiries, principally with respect to technical matters, from federal agencies. The Federal Government owns and operates a substantial number of aircraft which use engines manufactured or designed wholly or in part by Rolls-Royce . . .. The Washington liaison office of RRI responds to frequent inquiries from the Department of Defense and other federal departments and agencies about the technical characteristics of the engines included in those aircraft. In addition, the office is from time to time asked to respond to inquiries from other agencies of the Federal Government.

Affidavit of Alan Gray, at 3–4. The office also occasionally receives information regarding opportunities for sales to federal agencies. This information is merely passed along to RRI personnel elsewhere. The Washington office of RRI is not authorized to negotiate or contract for sales and is not responsible for soliciting new business. *Id.* at 4–5.

Deposition testimony of two RRI employees also indicates that RRI's Washington office is, in particular, responsible for ongoing support services connected with sale of the Pegasus jet engine to the U.S. Marines. RRI's engineers answer questions and act as a conduit to Rolls-Royce for complaints and information regarding the Pegasus program. As noted in the deposition testimony of RRI's president:

> Barry New [one of the employees stationed at the Washington office] is manager of Pegasus Support Operations to provide any interface between Rolls-Royce and the user organization, in this case the Marine Corps to assure that we are meeting their needs in parts support, technical products support, technical training, and to make certain that we are also meeting their needs in providing information on advanced developments of the engine that would be of interest to them, in procuring advanced versions of the airplane and/or engine.
>
> Conversely, to make certain that we are aware of the—their changing requirements that might affect how we change the product or how we capitalize on opportunities to sell some more of the engines and airplanes.

There is no question that, were these activities descriptive of relations with private purchasers rather than with instrumentalities of the federal government, they would constitute the doing of business within the meaning of section 334(a). Rolls-Royce's local activities—conducted by RRI—are regular, systematic, and continuous; constitute a substantial corporate presence here; and are obviously directed at advancing the corporate objectives of Rolls-Royce.

Relying on a well-established exception to the "doing business" standard, however, the defendant argues that, above all else, RRI's activities are those of a "liaison office", that is, an office established in the District solely for the purpose of contacts with federal agencies. Entry into the District in such circumstances has frequently been held to be an insufficient basis for the assertion of personal jurisdiction. *See, e.g., Fandel v. Arabian American Oil Co.,* 120 U.S.App.D.C. 193, 345 F.2d 87 (1965). The exception

> finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry. To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.

*Environmental Research International, Inc., v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 813 (D.C.App.1976).

The Court has concluded that Rolls-Royce's business activities in the District cannot be deemed to fall within the government contacts exception. Although the original exposition of the exception was framed quite broadly, *see, e. g., Mueller Brass Co. v. Alexander Milburn Co.,* 80 U.S. App.D.C. 274, 152 F.2d 142 (1945) (government contacts related to production of war materials), the exception has been invoked most recently in more limited contexts.

In *Fandel v. Arabian American Oil Co.,* the United States Court of Appeals for this circuit affirmed the trial court's dismissal of the action for lack of personal jurisdiction where defendant maintained a five-person office in the District "to maintain continuing relationships with the State Department and other executive agencies of the United States Government, with diplomatic missions accredited to that Government, and with educational and international organizations, private and public, interested in, or informed about, the Middle East generally and Saudi Arabia in particular." 120 U.S.App.D.C. 193, 194, 345 F.2d 87, 88 (1965). The office exchanged information with these government entities and briefed military personnel going to the Middle East. After noting that the office was located in Washington due to its "diplomatic and intelligence" functions and because of an expected contribution "to the formulation of official policies", the court stated: "This is not quite like the company whose agents in Washington are seeking contracts, either with our own Government or with other governments represented in Washington." *Id.* 120 U.S.App.D.C. at 195, 345 F.2d at 89. The government contacts cases, the court concluded, constituted a "recognition that Washington presents many business organizations with special needs for a continuous and ponderable physical presence there, *which needs are not those customarily associated with strictly commercial operations;* and that the purpose of Congress was not to make that presence in every case a base for the assertion of personal jurisdiction." *Id.* (emphasis added).

In the most recent government contacts case in the District of Columbia Court of Appeals, the court refused to find in personam jurisdiction under the modern D.C. long-arm statute where the only contacts of the defendants with the District were "visits by certain of [defendants'] personnel to the District of Columbia to consult with officials of the EPA concerning the possibility of a grant . . . ." *Environmental Research International, Inc., v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 813 (1976).

Finally, in *Siam Kraft Paper Co., Ltd. v. Parsons & Whittemore, Inc.,* the foreign defendant's local contacts involved its receipt of a feasibility study grant from the Agency for International Development and its negotiation of a loan from the Export-Import Bank, both instrumentalities of the federal government. 400 F.Supp. 810 (D.D.C.1975). After acknowledging that purely commercial contacts with the government might not fall within the government contacts exception, the Court stated: "The defendant in this case, however, has not engaged in sales to the Government but rather has merely taken advantage of the services, offered to prospective foreign investors, by various agencies of the Government. We find that such activities are well within the traditional 'governmental contacts' principle which denies personal jurisdiction over non-residents whose only contact with this jurisdiction *involves uniquely governmental activities.*" *Id.* at 812 (emphasis added).

In this Court's view, there is nothing unseemly in subjecting corporations to personal jurisdiction in the District when those corporations' contacts with the District involve substantial commercial relations with the federal government acting in its proprietary capacity. Although this may mean that a large number of foreign corporations will be subject to suit here, both federal and local law provide adequate mechanisms to insure that such defendants are not required to litigate in an inconvenient forum.

*See* 28 U.S.C. 1404(a) (1976) (allowing transfers "for the convenience of parties and witnesses, in the interest of justice"); D.C. Code § 13–425 (1973) (action may be stayed or dismissed where interest of justice dictates another forum).

In the case at bar, Rolls-Royce's contacts with the federal government in the District are largely with the government acting in a proprietary, rather than governmental capacity. Although RRI's central function here is not to solicit sales, and despite the local office's lack of authority to negotiate or enter into contracts of any kind, the fact remains that the RRI Washington office is not a legislative, lobbying, or diplomatic office, or one whose contacts with federal agencies touch uniquely governmental functions of the United States. Rather, RRI's operations in the District are largely those "customarily associated with strictly commercial operations." Although some of its activities involve contacts with the government in its non-proprietary role (*e. g.*, furnishing of noise characteristics of Rolls-Royce engines to the FAA), Rolls-Royce does a substantial amount of business in the District which directly involves commercial contacts with the government as purchaser of Rolls-Royce products. In these circumstances, the Court concludes that section 334(a) renders defendant Rolls-Royce amenable to the jurisdiction of this Court. Rolls-Royce was therefore subject to service, via Rule 4(d)(7) of the Federal Rules of Civil Procedure, under the provision of section 334(a) which allows service to be made on "the agent of the corporation or person conducting its business," in this case, RRI.

Pursuant to Rule 4(d)(3) of both the Federal Rules and the Rules of the District of Columbia Superior Court, service upon a corporation may be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by ap-

pointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." Service on RRI was accomplished, however, by leaving a copy of the summons and complaint with a clerical employee (the manager's secretary) in the Washington office of RRI.

The defendant, although objecting to service on RRI as constituting effective service on itself, has not raised an objection to this largely technical deficiency in the manner in which RRI was itself served. There is no question as to either RRI's or the defendant's receipt of timely actual notice of the action, and proper service could easily be accomplished on RRI by serving either a managing or general agent in the Washington office, or by serving its registered agent pursuant to D.C.Code § 29–933i. *See generally* 4 Wright & Miller, *Federal Practice and Procedure,* § 1101, at 384–85 (1969). The Court will therefore deny defendant Rolls-Royce's motion to quash service and to dismiss the complaint as to it for lack of personal jurisdiction.

The second pending motion to quash service and to dismiss was made by defendant Indian Airlines Corporation. The motion was filed in both pending cases.[4] Service on Indian Airlines was accomplished by serving Air India, itself a defendant in these actions, at the latter's place of business in the District of Columbia. Indian Airlines is a corporation organized under the laws of the Republic of India. It maintains no offices or employees of its own in the District. The air transportation service in which it is engaged is rendered almost entirely in India.

Plaintiffs base their theory of personal jurisdiction over Indian Airlines entirely on two facts.[5] The first is that Air India and Indian Airlines have "strongly overlapping boards of directors" and have a common chairman. The second is that, in addition to the fact that Air India has authority to

---

4. Indian Airlines Corporation filed identical motions in both pending cases; both plaintiffs have responded with identical oppositions. The motions in the two cases will therefore be treated together.

5. In addition, it is not disputed that defendant Air India, which maintains a sales and ticket office in the District, is doing business here.

write tickets for transportation on Indian Airlines (authority which it shares in common with most other major airlines pursuant to international agreement), its timetable, available at its office in the District of Columbia, also sets out the complete timetable of Indian Airlines.

Although these two corporations clearly have a substantial relationship, plaintiff has alleged no facts sufficient to allow the Court to disregard their separate corporate existence for purposes of service of process and personal jurisdiction. Instead, rather than relying directly on an "alter ego" type theory, plaintiff argues: (1) that Indian Airlines is doing business in the District through the publication of the joint schedule here by Air India acting as its agent; and (2) that the substantial identity in membership of the two boards of directors indicates that this schedule "is not a mere accident or after thought, but has been prepared only after careful consideration."

Although the "doing business" standard is broad, it must be construed far more narrowly in cases where the claim for relief bears no relation to the contacts with the District which form the jurisdictional base. *See Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *O'Neal v. Hicks Brokerage Co.,* 537 F.2d 1266, 1267–68 (4th Cir. 1976); *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 999 (2d Cir. 1975) (Friendly, C. J.). *Compare* D.C.Code §§ 13–334(a) *and* 13–422 *with* D.C.Code §§ 13–334(b) *and* 13–423. Even assuming that Indian Airlines has purposefully made its timetable available in the District through the actions of Air India, and further considering that it has regularly placed advertisements in the so-called joint timetable (see plaintiff's exhibit C in C.A. No. 77–1740), these business activities are insufficient to bring the defendant within the jurisdiction of this Court on a claim having absolutely no connection with the District. Whatever solicitation of business for its Indian operations takes place here is both passive and insubstantial; no other contacts with the District are alleged. Both the local and federal courts in the District have emphasized contacts far more substantial in predicating in personam jurisdiction on section 13–334(a), even in cases involving claims-related contacts. *See Goldberg v. Southern Builders,* 87 U.S.App. D.C. 191, 184 F.2d 345 (1950); *Frene v. Louisville Cement Co.,* 77 U.S.App.D.C. 129, 134 F.2d 511 (1943); *Price v. Griffin,* 359 A.2d 582 (D.C.App.1976); *Key v. S. C. Johnson & Son, Inc.,* 189 A.2d 361 (D.C.App. 1963); *Weinstein v. Ajax Distributing Co.,* 116 A.2d 580 (D.C.App.1955). The Court will therefore grant the motion of Indian Airlines to dismiss the complaints for lack of personal jurisdiction.