**Patricia M. HUGHES, Appellant,**

**v.**

**A.H. ROBINS COMPANY, INC., Appellee.**

**No. 83–1298.**

District of Columbia Court of Appeals.
Argued May 30, 1984.
Decided April 18, 1985.

---

1. *Thompson v. Louisiana,* —— U.S. ——, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984).

2. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

Quentin R. Corrie, Falls Church, Va., with whom Jay R. Goldman, Silver Spring, Md., was on the brief, for appellant.

William J. Cassidy, Jr., Washington, D.C., with whom George W. Miller and Paul J. Larkin, Jr., Washington, D.C., were on brief, for appellee. Kevin N. Whitney, Washington, D.C., also entered an appearance for appellee.

Before NEBEKER, BELSON, and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant seeks reversal of an order of the Superior Court dismissing her complaint for lack of *in personam* jurisdiction, and alternatively on the ground of *forum non conveniens*. Because the non-resident defendant's contacts with the District of Columbia were not continuous and substantial, we hold that the Due Process Clause

of the Fifth Amendment prohibits the assertion of *in personam* jurisdiction over it in this case. Therefore, we affirm the trial court's order on that ground without reaching the *forum non conveniens* issue.

## I

Patricia Hughes, a Virginia resident who is employed in the District of Columbia, brought suit in the Superior Court of the District of Columbia against A.H. Robins, Inc. ("Robins"), a manufacturer of pharmaceutical products. Her complaint stated that in May 1973 she visited her physician in his Virginia office, where he inserted into her a Dalkon Shield, an intrauterine device manufactured and sold by Robins. Four months later the physician removed the Dalkon Shield from Mrs. Hughes, again in his Virginia office. Mrs. Hughes alleged that, as a consequence of using the Dalkon Shield, she developed severe medical problems which left her unable to have children. The complaint sought compensatory and punitive damages from Robins in the sum of two million dollars.

Robins is a Virginia corporation with its principal place of business in Richmond, Virginia. It is the twelfth largest pharmaceutical company in the United States and sells its products throughout this country as well as abroad. Robins is not licensed to do business in the District of Columbia, and it does not maintain a registered agent in the District to accept service of process. It has no sales office in the District and makes no direct sales here; rather, it sells its products only to wholesalers outside the District.[1] It does, however, send representatives into the District once every two or three weeks to promote its products.[2] In addition, Robins advertises on District of Columbia television stations and in periodicals and newspapers that are published and circulated in the District of Columbia. Robins derives some economic benefit from the sale of its products in the District of Columbia; in 1982 its sales in the District amounted to $3,236,800, about 0.7 percent of its total sales worldwide.

Robins also maintains an office in the District of Columbia, staffed by a biologist and a secretary, for the purpose of monitoring congressional legislation affecting the pharmaceutical industry. In the past Robins has negotiated some contracts with the federal government, but it has done so outside of the District.

In its answer to the complaint, Robins asserted in part that the court lacked *in personam* jurisdiction over it. After filing the answer, it also filed a motion to dismiss Mrs. Hughes' complaint for lack of *in personam* jurisdiction or, alternatively, on the ground of *forum non conveniens.* Mrs. Hughes opposed the motion, arguing that Robins was "doing business" within the meaning of D.C.Code § 13–334(a) (1981), and therefore was subject to the jurisdiction of the District of Columbia courts. In addition, she maintained that dismissal on *forum non conveniens* grounds was unwarranted because no other forum was available, the Virginia statute of limitations having expired.

After a hearing, the trial court took the motion to dismiss under advisement. A week later it entered an order granting the motion on both alternative grounds. Mrs. Hughes now appeals from that order.

## II

The constitutional doctrine of due process limits the power of a state court to assert *in personam* jurisdiction over a nonresident defendant. *Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877). A non-resident may not be required to defend a suit in a forum which is not constitutionally "reasonable, in the context of our federal system of government...." *Interna-*

---

1. However, a Robins representative testified in his deposition that "[i]n an isolated case, if the wholesaler should be out of the product, it might be brought in to D.C. General [Hospital]."

2. There are six of these representatives, who are known as "detail men." All six work out of their own homes. None is a resident of the District of Columbia.

*tional Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Due Process Clause[3] prevents the imposition of two separate burdens on a corporate defendant in a forum where it does not engage in any significant activity: first, the inconvenience resulting from a trial "away from [the corporation's] 'home' or principal place of business," and second, the risk of having to defend against claims arising under unfamiliar legal systems, which is inconsistent with the "fair and orderly administration of the laws...." *Id.* at 317, 319, 66 S.Ct. at 159.

■ The first of these burdens has lost much of its significance over time because "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 90 L.Ed. 95 (1957). The second, however, remains a matter of judicial concern. The Supreme Court has consistently held that the Constitution protects non-resident defendants from being unknowingly subjected to the unfamiliar laws of states in which they are not doing business:

> The Due Process Clause, by ensuring the "orderly administration of the laws," *International Shoe Co. v. Washington,* 326 U.S. at 319 [66 S.Ct. at 159], gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed. 490 (1980). The critical issue in any case involving a non-resident defend-

ant is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.; see Kulko v. Superior Court,* 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). In this area of the law, the courts have long recognized that "few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko v. Superior Court, supra,* 436 U.S. at 92, 98 S.Ct. at 1696 (citation omitted).

The issue of whether a state court may assert *in personam* jurisdiction over a foreign corporation, in particular, has been a troublesome one for many decades. Originally, corporations were deemed artificial persons which existed and could be sued only in the state where they were created. *Bank of Augusta v. Earle,* 38 U.S. (13 Pet.) 519, 588, 10 L.Ed. 274 (1839). Dissatisfaction with this view grew rapidly with the expansion of the national economy in the nineteenth century and the concomitant increase in out-of-state corporate activity. Courts began searching for theories of jurisdiction which would support a suit against a foreign corporation doing business in the forum state.

The first such theory was that the corporation gave its implied consent to be sued in the forum state by conducting its business there. *E.g., St. Clair v. Cox,* 106 U.S. 350, 356, 1 S.Ct. 354, 359, 27 L.Ed. 222 (1882). Problems soon arose, however, because the consent was implied from the corporation's activities within the forum state; it thus became difficult to establish jurisdiction when the cause of action did not arise from those activities. *See Smolik*

---

**3.** Most of the decisions dealing with the issue presented here are based on the Due Process Clause of the Fourteenth Amendment and its effect on state court jurisdiction. In the District of Columbia the Fourteenth Amendment does not apply because the District is not a state. However, the Fifth Amendment, which does apply, also contains a Due Process Clause, and its reach is at least as great as that of its Fourteenth Amendment twin. *See Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 844 (1954). We therefore hold that, for purposes of determining the constitutional power of local courts over non-resident defendants, whether they be state courts or District of Columbia courts, the same principles of due process control.

*v. Philadelphia & Reading Coal & Iron Co.,* 222 F. 148 (S.D.N.Y.1915) (L. Hand, J.).

■ The second theory developed by the courts deemed a corporation "present" within the forum for jurisdictional purposes whenever it carried on business there. *E.g., International Harvester Co. v. Kentucky,* 234 U.S. 579, 589, 34 S.Ct. 944, 947, 58 L.Ed. 1479 (1914). This view of jurisdiction, however, was discarded as conclusory by the Supreme Court in *International Shoe Co. v. Washington, supra:* "[T]he terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process." 326 U.S. at 316–317, 66 S.Ct. at 158 (citation omitted). The Court held that the critical issue was whether the foreign corporation had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158 (citations omitted). It is these

contacts which should cause a non-resident defendant "reasonably [to] anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 297, 100 S.Ct. at 567 (citations omitted).

■ In general, "contacts" are those activities of a defendant which form a nexus between it and the forum state.[4] Common among the types of corporate business activities which constitute contacts is the solicitation of sales by corporate agents in the forum.[5] Advertising in the forum [6] and the derivation of significant revenue from the forum [7] are also factors which must be weighed in any assessment of the defendant's contacts. In addition, as the Supreme Court has recently observed, the "plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum." *Keeton v. Hustler Magazine, Inc.,* —— U.S. ——, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984).[8] Finally, although the inconvenience to the defendant is "always a

4. In the District of Columbia, however, those activities which are conducted here solely for the purpose of gathering information from the federal government are not "contacts" within the meaning of *International Shoe* and its progeny. *Mueller Brass Co. v. Alexander Milburn Co.,* 80 U.S.App.D.C. 274, 275–276, 152 F.2d 142, 143–145 (1945); *see Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 813–814 (D.C.1976) (en banc). Hence jurisdiction in this case cannot be based on the activities carried on in Robins' District of Columbia office, which consist entirely of monitoring congressional legislation. Contrary to appellant's assertions, the record (specifically, the deposition of Thomas Costa) demonstrates that Robins never entered into a contract in the District of Columbia with the federal government; its only government contracts were negotiated and executed in Pennsylvania and Illinois.

5. *See, e.g., Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 561, 30 L.Ed.2d 559 (1971); *Seymour v. Parke, Davis & Co.,* 423 F.2d 584 (1st Cir.1970). Originally, mere solicitation, without more, was deemed to be an insufficient basis for the assertion of *in personam* jurisdiction. *Green v. Chicago, B. & Q. Ry.,* 205 U.S. 530, 533, 27 S.Ct. 595, 596, 51 L.Ed. 916 (1907).

This position, however, was implicitly rejected in *International Shoe Co. v. Washington, supra,* 326 U.S. at 315, 319, 66 S.Ct. at 159. *See Developments in the Law: State-Court Jurisdiction,* 73 Harv.L.Rev. 909, 930 (1960); *see also* 4 C. Wright & A. Miller, Federal Practice and Procedure § 1069 & n. 66 (1969) (hereinafter Wright & Miller).

6. *See, e.g., Wilkerson v. Fortuna Corp.,* 554 F.2d 745 (5th Cir.1977); *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193 (4th Cir.1976); *see also* 4 Wright & Miller, *supra* note 5, at § 1069 & n. 68.

7. *See World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 299, 100 S.Ct. at 568 (implying that direct but not collateral economic benefit derived from a forum by a defendant may be deemed a contact); *Lee v. Walworth Valve Co.,* 482 F.2d 297, 299 (4th Cir.1973) ("sales ... aggregating several hundred thousand dollars a year cannot be labeled insubstantial"); *see also* 4 Wright & Miller, *supra* note 5, at § 1069 & n. 69.

8. The fact that the *plaintiff* is not a resident of the forum state does not defeat jurisdiction if the *defendant* has the necessary minimum contacts. *Keeton v. Hustler Magazine, Inc., supra,* 104 S.Ct. at 1480–1481.

primary concern ... the forum State's interest in adjudicating the dispute" may also be relevant to a due process analysis. *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 292, 100 S.Ct. at 564 (citation omitted); *see Lee v. Walworth Valve Co., supra* note 7, 482 F.2d at 299–300.[9]

 The weight accorded to these contacts varies greatly with the circumstances of each case. As the Supreme Court explained in *International Shoe,* there are two fundamentally different types of contacts: those which are related to the cause of action, and those which are not. This distinction is critical because contacts of the former kind are entitled to be given substantially more weight; even one such contact may be sufficient to support *in personam* jurisdiction over a non-resident defendant. 326 U.S. at 318, 66 S.Ct. at 159.

> [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

*Id.* at 319, 66 S.Ct. at 159 (citations omitted). Contacts unrelated to the cause of action, however, are assigned less weight; they must be "continuous" and "substantial" in order to support *in personam* jurisdiction.[10]

 In sum, whether a court may constitutionally assert *in personam* jurisdiction over a non-resident defendant depends upon "the relationship among the defendant, the forum, and the litigation...." *Shaffer v. Heitner, supra,* 433 U.S. at 204, 97 S.Ct. at 2579. "Like any standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Court, supra,* 436 U.S. at 92, 98 S.Ct. at 1696 (citation omitted). In a product liability case such as this one, the focus must be on whether the defendant manufacturer or seller can reasonably foresee that it may be sued in the forum state:

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 297, 100 S.Ct. at 567 (citations omitted).

### III

In this case the cause of action is not related in any way to the activities carried on by the non-resident defendant corporation in the District of Columbia. Therefore, the exercise of *in personam* jurisdiction over the defendant Robins would violate the Due Process Clause unless Robins' activities in the District are "continuous" and "substantial." There are only two Su-

---

9. In this case, of course, the District of Columbia has no "interest in adjudicating the dispute." Although the District has a general concern with protecting its residents from defective consumer products, it has no reason to add to its crowded court dockets a suit by a Virginia plaintiff against a Virginia defendant on a cause of action which arose entirely in Virginia.

10. "[T]here have been instances in which the *continuous* corporate operations within a state were thought so *substantial* and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe Co. v. Washington, supra,* 326 U.S. at 318, 66 S.Ct. at 159 (emphasis added; citations omitted); *see id.* at 320, 66 S.Ct. at 161 ("systematic and continuous").

preme Court cases since *International Shoe* that are factually comparable to the present case, to the extent that each involves a suit by a non-resident plaintiff against a non-resident corporation on a cause of action which does not arise out of the defendant's forum activity: *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), and *Helicopteros Nacionales de Colombia, S.A. v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).[11]

In *Perkins* the Court held that the Due Process Clause did not prohibit the exercise of *in personam* jurisdiction by an Ohio court over a Philippine corporation which had been "carrying on in Ohio a continuous and systematic, but limited, part of its general business." 342 U.S. at 438, 72 S.Ct. at 415. The suit arose out of a dispute concerning certain stockholder agreements unrelated to the defendant's activities in Ohio, and the plaintiff was not an Ohio resident. The defendant's mining operations were completely halted during the occupation of the Philippines by the Japanese in World War II. Consequently, the corporation's president, who was also its general manager and principal stockholder, traveled from the Philippines back to his home in Ohio. There he maintained an office, took action on behalf of the corporation, kept the company files, wrote business letters, issued salary checks to himself and his two assistants, transferred company stock and funds through a local bank account, held directors' meetings, and supervised the rehabilitation of the mining operations in the Philippines after the war ended. "Thus he carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company. He

there discharged his duties as president and general manager...." *Id.* at 448, 72 S.Ct. at 419. The Court held that "[i]n those circumstances, Ohio was the corporation's principal, if temporary, place of business so that Ohio jurisdiction was proper even over a cause of action unrelated to the activities in the State." *Keeton v. Hustler Magazine, Inc., supra,* 104 S.Ct. at 1481 n. 11.

In the more recent case of *Helicopteros Nacionales de Colombia, S.A. v. Hall, supra,* the Court held that the Due Process Clause prohibited the exercise of *in personam* jurisdiction by a Texas court over a Colombian corporation. The case was a wrongful death action arising from a helicopter crash in Peru unrelated to the defendant's activities in Texas. The plaintiffs, representatives of the four crash victims, as well as the victims themselves, were all non-residents of Texas.

After reciting the facts of *Perkins v. Benguet Consolidated Mining Co., supra,* the Court described the contacts of the corporate defendant with Texas. It noted that the defendant was not licensed to do business in Texas and had no place of business there. The defendant's only contacts with Texas had consisted of sending its chief executive officer to negotiate a contract in Houston, accepting checks drawn on a Houston bank, purchasing equipment from a Fort Worth manufacturer, and sending its personnel to that manufacturer's facilities in Fort Worth for training.

The Court then considered each contact in turn. First, it concluded that the one trip to Texas for the purpose of negotiating a contract could not be regarded as "conti-

---

**11.** There are four other Supreme Court cases involving the assertion of jurisdiction over a non-resident defendant for a cause of action arising outside of the forum. Two of them, however, deal with *quasi in rem* jurisdiction, not *in personam* jurisdiction. *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Shaffer v. Heitner, supra.* The other two are so different from this case on their facts as to be of little or no help to us here. *Kulko v.*

*Superior Court, supra* (action in a California court by a California resident against a New York resident to modify a Haitian divorce decree); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (holding that by moving from Pennsylvania to Florida after executing a revocable deed of trust in Delaware, the settlor could not subject the Delaware trustee to the jurisdiction of the Florida courts).

nuous and systematic," as those terms were used in *Perkins* and *International Shoe*. Second, the fact that the checks were drawn on a Texas bank was "of negligible significance," 104 S.Ct. at 1873, because the defendant had not requested the checks to be so drawn, and the unilateral action of one party is insufficient to give a court jurisdiction over another party. Finally, citing *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923), the Court held that the equipment purchases and the trips to Fort Worth for training were not sufficient to support *in personam* jurisdiction. 104 S.Ct. at 1874.

■ The instant case falls somewhere between *Perkins* and *Helicopteros*. Robins' contacts with the District of Columbia are surely less substantial than those of the defendant in *Perkins*, but greater than those in *Helicopteros*. In *Helicopteros* the principal contact was the continuous purchasing of goods and training services from Texas; in this case, however, the primary contact relied upon by appellant is Robins' solicitation of sales in the District. The solicitation of sales, unlike the purchasing of goods and services, can alone be sufficient to support *in personam* jurisdiction.[12] Thus we may find jurisdiction if Robins, through its solicitation of sales, has "been carrying on in [the District] a continuous and systematic, but limited, part of its general business." *Perkins v. Benguet Consolidated Mining Co., supra,* 342 U.S. at 438, 72 S.Ct. at 419.

### IV

Although Robins makes no direct sales in the District, it does actively solicit the sales of its products here, principally through its use of detail men. Once every two or three weeks over the last ten years, Robins has sent about six detail men into the District. These detail men promote Robins products by visiting doctors, answering their questions, and supplying them with samples and scientific studies. Robins also advertises its products sporadically on television in the District and in local periodicals and trade journals, and it mails promotional literature from time to time to potential purchasers of its products. On one occasion, in an attempt to reach every obstetrician, gynecologist, internist, family practitioner, and osteopath in the District, Robins mailed "Dear Doctor" letters to District practitioners to promote the use of Dalkon Shields. At least in part as a result of these promotional efforts, Robins derives substantial revenue from the sale of its products in the District of Columbia. In 1982, for example, its total sales in the District amounted to $3,236,800, which was nearly double its 1981 total, and five times its 1980 total.

■ With regard to Robins' use of detail men to solicit sales, we look for guidance to the Supreme Court decision in *International Shoe Co. v. Washington, supra*. In that case the defendant corporation, like Robins, had no office in the forum state, entered into no contracts, and maintained no stock of its products there. Unlike Robins, however, the corporation had at least eleven salesmen who actually resided in the forum state. They used samples to promote the products, sometimes by renting permanent "sample rooms," and solicited orders from prospective purchasers at prices fixed by the corporation. The Supreme Court held that these activities were "systematic and continuous" and therefore provided "sufficient contacts or ties with the state of the forum to make it reasonable and just ... to permit the state to enforce *the obligations which appellant has incurred there*." 326 U.S. at 320, 66 S.Ct. at 160 (emphasis added). Implicit in this holding is the conclusion that such activities probably would not support the exercise of *in personam* jurisdiction when the cause of action is unrelated to them, because, as the Court recognized, jurisdiction in such a case requires not only "conti-

---

**12.** This distinction between buying and selling has been criticized, yet it persists. *See Development in the Law: State-Court Jurisdiction, supra* note 5, 73 HARV.L.REV. at 931.

nuous" but also "substantial" forum activity by the defendant. *Id.* at 318, 66 S.Ct. at 159.

■ A very recent case supports our reading of *International Shoe.* In *Keeton v. Hustler Magazine, Inc., supra,* Hustler was sued for libel in connection with the sale of its magazine in New Hampshire. The Supreme Court noted that Hustler sold approximately 10,000 to 15,000 copies of its magazine each month in New Hampshire, the forum state. 104 S.Ct. at 1477. On this basis it held that because Hustler "has continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *Id.* at 1481 (citation omitted). The Court also took pains to point out that the plaintiff "was suing, at least in part, for damages suffered in New Hampshire," *id.* at 1479, and that "the cause of action [arose] out of the very activity being conducted, in part, in New Hampshire." *Id.* at 1481. Contrasting the case with *Perkins,* however, the Court went on to say that "[i]n the instant case, respondent's activities in the forum may not be so substantial as to support jurisdiction over a cause of action unrelated to those activities." *Id.* (footnote omitted). Thus the Court continues to recognize a distinction between cases in which the cause of action arises in the forum and those in which it does not, and makes clear that in cases of the latter type, the defendant's activities must be not only continuous but also "substantial," as that term is used in *Perkins*[13] and *International Shoe.*[14] Robins' solicitation of sales in the District, through its detail men, is undeniably continuous. Because their infrequent visits on behalf of Robins are far more limited than Hustler's activities in New Hampshire, however,[15] we hold that they are not "substantial," and therefore not sufficient to "support jurisdiction over a cause of action unrelated to those [visits]." *Keeton v. Hustler Magazine, Inc., supra,* 104 S.Ct. at 1481.

■ Of all the cases cited to us by the parties, *Ratliff v. Cooper Laboratories, Inc., supra* note 5, and *Seymour v. Parke, Davis & Co., supra* note 5, are closest to this one on their facts. Both involved pharmaceutical manufacturers who were being sued for damages caused by allegedly defective products. In each case the product was purchased and used, and the injury occurred, in a state other than the forum. The activities of the corporate defendants in the respective forum states were no more extensive than the activities of Robins in the District of Columbia. Both courts, following *International Shoe,* held that due process forbade the exercise of jurisdiction by the courts of the forum states.[16] In *Ratliff,* in particular, the court

13. *Perkins, supra,* 342 U.S. at 447, 72 S.Ct. at 419.

14. *International Shoe, supra,* 326 U.S. at 318, 66 S.Ct. 159.

15. The Court of Appeals' opinion in *Keeton* reveals that Hustler regularly sent its magazines into New Hampshire, to be distributed there by independent dealers. *Keeton v. Hustler Magazine, Inc.,* 682 F.2d 33 (1st Cir.1982). In the case at bar, however, Robins never sends its products into the District of Columbia except in "isolated" cases (see note 1, *supra*), relying instead on out-of-District wholesalers to get its products into the stores.

16. *Ratliff* was a consolidated appeal in two separate cases, in which Florida and Indiana residents filed suit in a federal court in South Carolina against two Delaware drug manufacturers on causes of action arising out of the ingestion of their drugs in Florida and Indiana, respectively. One of the manufacturers had solicited business in South Carolina through the use of five detail men, all of whom were South Carolina residents. The other merely engaged in mail solicitation of dealers and wholesalers and the mailing of promotional literature to doctors. The Fourth Circuit held that these activities were insufficient to vest *in personam* jurisdiction over the defendants in the South Carolina court.

*Seymour* is identical to *Ratliff* on its material facts. In *Seymour* an action was brought by a Massachusetts resident in a federal court in New Hampshire against a Michigan drug manufacturer on a cause of action arising out of the ingestion of its drugs in Massachusetts. The

stressed the fact that the plaintiffs' claims, as in this case, were not related in any way to the defendants' activities in the forum:

> Significant in the instant factual setting is the lack of a "rational nexus" between the forum state and the relevant facts surrounding the claims presented.... If "plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corporation and the state must be *fairly extensive* before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.' "

444 F.2d at 748 (citations omitted; emphasis added by the *Ratliff* court). We agree with this reasoning and adopt it.

To support her argument that Robins' activities in the District of Columbia are substantial in the constitutional sense, appellant relies on *Ramamurti v. Rolls-Royce, Ltd.,* 454 F.Supp. 407 (D.D.C.1978), an action against a British corporation arising from a plane crash in India. It was established in that case that the defendant, Rolls-Royce, maintained an office in the District in which it employed four engineers and two clerical assistants. Although these personnel were not authorized to negotiate contracts or solicit new business, they did provide parts and technical support to the federal government in connection with its use of Rolls-Royce aircraft engines. The court found that these activities were "regular, systematic and continuous; [that they] constitute[d] a substantial corporate presence here; and [that they were] obviously directed at advancing the corporate objectives of Rolls-Royce." *Id.* at 410. It then ruled that Rolls-Royce was doing business in the District within the meaning of D.C.Code § 13–334(a) (1981) and that its activities "cannot be deemed to fall within the government contacts exception." *Id.* at 411. *Ramamurti* is distinguishable from the case at bar in several respects. Robins has only two permanent employees in the District of Columbia, and their activities, unlike those of Rolls-Royce,[17] plainly qualify as "government contacts." See note 4, *supra.* Robins' only commercial dealings with the federal government, as far as the record discloses, take place outside the District. The daily activities of the Rolls-Royce employees in *Ramamurti* were far more extensive than those performed in the District by Robins' detail men. We think that *Ramamurti* is sufficiently different from this case to make it inapposite here, and in any event it is not binding on us. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).[18]

■ Finally, we turn to the $3,236,800 in revenue which Robins derived in 1982 from the sales of its products in the District. Three million dollars is a lot of money, even though it represents less than one percent of Robins' total sales. We hold, however, that it cannot sustain the exercise of *in personam* jurisdiction in this case. Although the Supreme Court in *Keeton v. Hustler Magazine, Inc., supra,* did not specify the amount of revenue Hustler derived from the sales of its magazines in New Hampshire, there can be no doubt that it was considerable; nevertheless, the Court plainly intimated that it might not be "substantial" enough in the constitutional sense to support a cause of action unrelated to those sales. 104 S.Ct. at 1481. In *Lee v. Walworth Valve Co., supra* note 7, the defendant's annual sales of several hundred thousand dollars' worth of its prod-

---

manufacturer had solicited business in New Hampshire through the use of six detail men, most of whom were New Hampshire residents. The First Circuit held that this activity was insufficient to vest *in personam* jurisdiction over the defendant in the New Hampshire court.

**17.** The court in *Ramamurti* described Rolls-Royce's activities in the District as "substantial commercial relations with the federal government acting in its proprietary capacity." 454 F.Supp. at 411.

**18.** For this reason we need not decide whether *Ramamurti* is inconsistent with our own decision in *Weisblatt v. United Aircraft Corp.,* 134 A.2d 713 (D.C.1957).

ucts, together with the activities of its salesmen in the forum state, were deemed sufficient to sustain jurisdiction over a cause of action unrelated to the defendant's forum activities. The plaintiff, however, was a resident of the forum state, and the court made clear, citing and distinguishing its own prior decision in *Ratliff v. Cooper Laboratories, Inc., supra* note 5, that it would not have upheld the exercise of jurisdiction had the plaintiff been a nonresident. Like the *Lee* court, we recognize the financial reality in the flow of three million dollars from the District of Columbia into Robins' coffers; such revenues "cannot be labeled insubstantial" in any economic sense. 482 F.2d at 299. But, reading *Lee* and *Ratliff* together, we conclude that when the cause of action is unrelated to any corporate activity in the forum, such revenues cannot be deemed "substantial" within the meaning of *International Shoe*.[19]

 Robins' advertising in the District adds little to the case. As a contact advertising is significant only when it is pervasive or when the cause of action arises in the forum. *See, e.g., Wilkerson v. Fortuna Corp., supra* note 6.[20] Here, however, the advertising is only intermittent, and the cause of action has nothing to do with the forum. The mailing of the "Dear Doctor" letters is not a weighty factor either, since it was not continuous. *See Ratliff v. Cooper Laboratories, Inc., supra* note 5, 444 F.2d at 746.

### V

Because Robins' activities in the District of Columbia have not been *both* substantial *and* continuous, we hold that Robins has not had the minimum contacts with the District which have been constitutionally required as a basis for *in personam* jurisdiction ever since the Supreme Court decision in *International Shoe*. The Due Process Clause of the Fifth Amendment therefore prohibits any exercise of such jurisdiction over Robins in this case by the courts of the District of Columbia.

*Affirmed.*

---

**19.** Although there is no mention of corporate revenues in the *Ratliff* opinion, the court surely must have been aware that one of the two defendants, Sterling Drug Company, was one of the leading drug manufacturers in the nation and undoubtedly derived considerable revenue from sales of its products in South Carolina (probably at least as much as Robins derives from sales in the District of Columbia).

**20.** In *Wilkerson* a Texas resident sued a New Mexico race track owner in a federal court in Texas on a cause of action arising in New Mexico. The Fifth Circuit upheld the assertion of *in personam* jurisdiction over the defendant, noting that Texas prohibited parimutuel horse racing and that the defendant's race track was built as close to Texas as New Mexico law would allow. The defendant "saturated El Paso with its substantial advertising activity to attract Texans [to take] a short step across [the state] line.... In summary, [it] was designed and operated as a two-state venture." 554 F.2d at 748.